28 C.C.P.A.(Patents)

## In re SLYE.

### Patent Appeal No. 4495.

Court of Customs and Patent Appeals.
July 2, 1941.

T. Clay Lindsey and George N. Robillard, both of Hartford, Conn., for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel) for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claim 66 in appellant's application for a patent for an alleged invention relating to counting mechanism adapted to register both the quantity and cost of gasoline being dispensed from a filling station pump.

Several claims in appellant's application were allowed by the Primary Examiner.

Appealed claim 66 reads:

"66. The combination with a counter including counter wheels, transfer mechanism for actuating the higher order wheels, resetting mechanism for said wheels including reset pawls on said wheels, a shaft having portions engaging said pawls and rotatable in a resetting direction to effect resetting of said wheels, and stop means stopping said wheels in reset position, of means for effecting prior to the next counting operation a reverse rotation of said shaft separating said portions from said pawls."

·The particular element in claim 66 relied upon here by counsel for appellant as lending patentability to the appealed claim is "stop means stopping said [counter] wheels in reset position" in combination with "means for effecting prior to the next counting operation a reverse rotation of said [resetting] shaft separating said portions from said pawls."

The reference is: Chase, 1,471,306, October 16, 1923.

Counting mechanisms of the character of that here involved must, after an operation, be capable of being readily reset so that upon starting another operation both the quantity and cost indicators register zero, otherwise the registration of both the quantity and cost of gasoline will be inaccurate.

Appellant's device, including the improvements therein over the prior art, is clearly set forth in the Primary Examiner's statement to the Board of Appeals. We quote from the examiner's statement:

"The invention relates to a counting mechanism adapted to register both the quantity and cost of gasoline which is dispensed from a filling station pump. Such pumps, sometimes referred to as computing pumps usually comprise an underground source of liquid supply, a motor, a pump, a meter for measuring the liquid delivered, a register driven by the ·meter to indicate quantity delivered, and a second register driven from the meter through a variator to indicate the cost of liquid delivered. The variator may consist of a change gear mechanism which is capable of being set to drive the cost register at varying speeds, and the settings are made and changed to correspond to the current price per unit volume. It is usual in this type of registering device, as is the case in this application, to provide the register head with two oppositely disposed faces, each of which displays the same indications, that is, the gallons delivered and the cost thereof.

"Devices such as these, of course, must be capable of being readily reset to zero, so that upon starting a delivery, both the quantity and cost registers show 'zero,' in order that the true cost and quantity will be displayed at the end of any particular dispensing operation.

"It is a particular object of this invention to improve the resetting mechanism. In this device, the resetting is accomplished by turning the wheels forwardly, or in the same direction that they rotate during a dispensing operation, and this type of zeroizing action makes possible two undesirable results; first, that the wheels may be moved too far, that is, beyond their zero position; and second, that, due to the forward turning of the wheels, they may drag forward the gearing which connects them to their primary driving source, and hence, when a new registering operation is started, following the zeroizing operation, due to the backlash which has been introduced into the gearing, some idle movement of the registering train ensues before the backlash is taken up. During this idle movement, the registering train, at the beginning of a dispensing operation, following a resetting, although liquid is being dispensed, it is not being registered and, hence, the filling station proprietor is losing due to inaccurate registration.

"To avoid these two objectionable features, the device of this application provides an over-throw-preventing mechanism which stops the wheels when they reach zero, and a backlash eliminating mechanism, which puts a brake onto the driving element of a clutch in the driving train and thus holds the gearing in a position in which it was at the end of one dispensing operation, keeps it from moving during the zeroizing operation so that at the beginning of a subsequent dispensing operation, it is ready immediately to drive the register without any objectionable lag due to backlash."

It will be observed from the quoted excerpt from the examiner's statement that, unless a device of the character of that here involved is capable of being readily and positively reset at zero "so that upon starting a delivery, both the quantity and cost registers show 'zero,' " the "quantity and cost" of gasoline will not be registered accurately.

It further appears from the quoted excerpt from the examiner's statement that appellant has provided a counting mechanism in which, by means of an "over-throw-preventing mechanism," the counter wheels are positively stopped "when they reach zero," and that, in addition thereto, he has also provided a "backlash eliminating mechanism, which puts a brake onto the driving element of a clutch in the driving train and thus holds the gearing in a position in which it was at the end of one dispensing operation, keeps it from moving during the zeroizing operation so that at the beginning of a subsequent dispensing operation, it is ready immediately to drive the register without any objectionable lag due to backlash."

In rejecting the appealed claims on the patent to Chase, the Primary Examiner stated that the patentee disclosed a detent which at the end of one revolution of the "zeroizing shaft" enters a notch and, as the examiner stated, *"offers resistance to the turning of the shaft."* (Italics ours.) The examiner further stated that the "zeroizing shaft" was then turned reversely, although it might be "turned further [forwardly] after the detent engages the notch, the structure in the patent which offers resistance to turning, together with the structure for effecting reverse turning, *effects the same result as is effected by the mechanism of claim 66,* and is believed to fairly meet the requirements of this claim, *for to modify the structure of Chase in order to make the offering of resistance positive* [that is, in order to positively stop the counter wheels at zero] is believed a change involving mechanical skill, and not invention." (Italics ours.)

In affirming the decision of the Primary Examiner, the Board of Appeals said: "As to claim 66, the sole question is whether it required invention to provide a stop means for stopping the wheels in reset position. We believe that, *when it was found that through intent or carelessness the wheels did not always stop at zero in the Chase device, the addition of a stop means was an obvious expedient and devoid of invention."* (Italics ours.)

It will be observed that the tribunals of the Patent Office recognized that the structure defined in the patent to Chase does not include resetting mechanism which will positively reset the wheels at zero. The Primary Examiner stated that it would be obvious to modify the structure disclosed in the patent to Chase in order to accomplish the results obtained by appellant, and which were obviously not obtained by the

Chase structure. No suggestion is made in either of the decisions below, however, as to how that modification might be accomplished.

The mechanism here involved is somewhat intricate, and the solution of the problem confronting appellant (which was of considerable importance to dispensers of gasoline and to the purchasing public) was not simple.

There is nothing in the patent to Chase, nor is there anything else of record, except appellant's disclosure, to suggest how the defect, conceded to be present in the Chase structure, could be remedied. Accordingly, we are unable to agree with the views expressed by the tribunals of the Patent Office that the structure defined by the appealed claim would be obvious to one skilled in the art.

For the reasons stated, the decision of the Board of Appeals is reversed.