**37 C.C.P.A.(Patents)**

### Application of DELANCEY.

#### Patent Appeals No. 5605.

United States Court of Customs
and Patent Appeals.

Sept. 30, 1949.

John M. Cole, New York City (Martin T. Fisher and Fisher & Christen, Washington, D. C., of counsel), for appellant.

W. W. Cochran, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

GARRETT, Chief Judge.

The application for patent, all claims of which are before us by appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting them, is broadly entitled "For Heating Plants." The specification states that the claimed invention "contemplates an oil fired furnace or heating plant of the type employing a boiler and used either for steam or hot water heating, or for supplying domestic hot water."

It is said in the specification, but not defined in the claims, that "* * * the heating plant uses a boiler of much smaller dimension and water capacity than is customarily found in steam or hot water boilers used for similar output, and according to the present invention the heating capacity of the boiler is equivalent to the heating capacity of conventional boilers of much greater weight, size, and water capacity."

There are eight claims numbered 13, 14, and 30 to 35, inclusive. Claims 13 and 31 to 35, inclusive, are directed to an apparatus; claims 14 and 30 are for the method of operation.

378

We quote claims 13, 14, and 31:

"13. In combination, a vaporizing pot type liquid fuel burner into which fuel is fed by gravity at high rate for high fire and at low rate for a pilot flame, a continuously operated blower for delivering a constant stream of air into the burner, and a boiler having a combustion chamber directly above the burner, fire tube flues above the combustion chamber, a chimney connected above the flues, and baffles in the flues, the baffles being effective when the burner operates at high fire to retard escape of heated products of combustion and keep the pressure in the combustion chamber above atmospheric, and ineffective to substantially retard the passage of the stream of air when the pilot flame only is in operation.

"14. The method of operating an oil fired boiler having a fire box, flues and baffles in the flues, which includes supplying oil and air under positive pressure to an oil burning vaporizer, initiating combustion, vaporizing the oil, mixing the vapors with air, discharging flame from the vaporizer into the fire box in such volume and at such positive pressures as to fill the fire box with flame, forcing the hot gases from the fire-box past the baffles to maintain them heated to redness and while the pressure is still above atmospheric, and then subjecting the gases to natural draft to discharge them into the atmosphere.

"31. An oil fired heating plant comprising a natural draft producing stack, a boiler connected to the stack and provided with a fire box closed except for vertical tubular passages traversing the water space thereof and through which products of combustion escape, spiral baffles occupying the lower portions only of the tubular passages immediately above the fire box to offer resistance to the passage of the products of combustion and facilitate the transfer of heat to the boiler content, a vaporizing pot type forced draft oil burner immediately below the fire box and of a draft and fuel capacity to maintain the entire fire box under positive pressures of from about five to about ten one hundredths of an inch of water, produce flame which heats the baffles to temperatures at which deposit of soot thereon is prevented under the conditions of excess oxygen maintained by the forced draft, and insufficient to drive flame beyond the baffles, the aerodynamic resistance provided by the baffles and the transfer of heat to the boiler content accounting for the draft loss between the positive pressure conditions in the fire box and the negative pressure conditions at the top of the boiler and a stack temperature of not more than about 600° F."

Claims 32, 33, 34, and 35 are made dependent on claim 31. Claim 32 describes the spiral baffle element mentioned in claim 31 as having a downwardly extending heat absorbing end in the fire box. Claim 33 recites the same element and also recites that each spiral baffle has one complete turn in the tubular passage "to compel rotation of products of combustion." Claim 34 requires a base aperture to receive the top of the burner with inner and outer concentric sheet metal shells welded thereto, the outer shell bring substantially longer than the inner shell; an upper cover plate welded to the outer shell; a lower cover plate welded to the inner shell, the cover plates having aligned apertures; and recites that the tubular passages are in the form of tubes welded into the apertured plates. Claim 35 requires the arrangement defined in claim 34 and also requires "a normally closed inspection door opening in the form of a tube extending between both shells and welded thereto."

The following patents are cited as references: Bowen, 1,745,204, Jan. 28, 1930, Powers, 2,064,080, Dec. 15, 1936, Valjean, 2,068,441, Jan. 19, 1937, Bock, 2,162,572, June 13, 1939.

In the official statement of the Primary Examiner following the appeal to the board there appears a description of appellant's apparatus and the method of its operation, which we reproduce, notwithstanding its length, it having relied upon largely by both the board and the Solicitor for the Patent Office. (Appellant's description in his brief contains much argumentative matter. Factually it does not differ substantially from that of the Primary Examiner.)

Inasmuch as the indicating numerals would be virtually meaningless without the drawings, they are deleted as indicated by stars.

"The boiler structure includes a base * * *. Welded to the base * * * is an outer cylindrical wall * * * and an inner cylindrical shorter wall *. * * . A lower plate or crown sheet * * * is welded to the inner cylindrical wall and an upper plate or crown sheet * * * is welded to the outer cylindrical wall. The plates * * * and * * * are apertured and to the apertures are welded four tubes * * *. The upper plate * * * is provided with a central bushing * * * for an outlet steam pipe * * *. The outer shell * * * of the boiler is provided with a bushing * * * near the bottom for the return and bushings * * *, * * * below the water line for domestic hot water heater and aquastat.

"The bottom or base * * * is provided with a central aperture * * *. This aperture * * * is provided to receive the burner * * *, the burner being in the form of a vaporizing or pot type burner fed by oil through an inlet pipe * * * connected with [a] constant level valve * * * and supplied with air under pressure by a blower unit * * * and [a] conduit * * *.

"In vertical tubes * * *, * * * are located spiral baffles * * *. The baffles are located in the lower part of the tube so that the upper part of the tube is free.

"Original claim 4 states that the spiral baffles have a downwardly extending heat absorbing end in the combustion chamber. This statement is not found in the original description but it is found in original claim 4.

"The cylindrical shells or walls * * * and * * * are apertured to receive a tube * * * for a door opening. The opening * * * is closed by a door * * * tight enough to resist internal pressure.

"Flame is discharged from the burner structure out under the spreader and completely fills the combustion chamber, and impinges directly on the side walls, and top of the combustion chamber and the lower faces of the baffles * * * before passing upwardly into the tubes * * *. The flames are compelled to revolve as they pass up along the spiral baffles. The baffles become so hot as to remain entirely free of soot or carbon. This revolving of the flame makes the flame wipe the inner surfaces of the tube * * *. The spiral baffles terminate a substantial distance below the top of the tubes.

"The baffles in the tubular passages * * * offer resistance to the passage of products of combustion and produce draft loss therealong. The pressure developed by the forced draft for the burner is therefore made sufficient to compensate for this loss and maintain positive pressure all the way to the baffles and over all or nearly all of their entire length.

"A pipe * * * extends laterally from one side of the smoke box and connects with the pipe * * * which leads to the chimney.

"Original claim 13 states that although the baffles retard escape of the heated products of combustion and keep the pressure in the combustion chamber above atmospheric they do not retard the passage of the stream of air from the continuously operated blower when the pilot flame only is in operation. The Examiner finds no mention in the original description that when the fuel supply is cut off the burner can operate continuously and the baffles will not retard the passage of the stream of air. However, claim 13 is an original claim.

"The operation during the burning of the fuel is described by applicant in an amendment inserted in page 6, line 5 from the bottom as follows: 'Analyzing the operation of the boiler from the point of view of draft loss, which is usually measured in inches of water, it is obvious that draft loss must occur from the region where the flame is discharged from under the flame spreader all the way to the stack. As the pressure is positive in the burner and in the fire-box and is negative (i.e. below atmospheric) at the breeching the entire draft loss or loss of pressure except

for the small frictional loss in the tubes * * * above the baffles is caused by the baffles. The pressure developed by the forced draft for the burner is therefore made sufficient to compensate for this loss and maintain positive pressure all the way to the baffles and over all or nearly all the entire length of the tubes. This pressure condition is unlike that ordinarily present in boilers. In general in oil fired equipment negative pressure exists all the way down to the top of the fire box and in solid fuel fired furnaces the negative pressure exists all the way through the grates.'

"The first sentence on page 6 of the original description reads: 'When the burner is operating at high fire the air for combustion is supplied under positive pressure of about five hundredths to one tenth of an inch of water (measured in the flame zone) and the oil is fed in from the constant level valve under a head of about $\frac{1}{4}$ to $\frac{3}{8}$ of an inch at a sufficient rate to maintain the desired combustion rate under these conditions'. Applicant states in the last sentence of page 6 of the description that it is possible to expect regular operation with stack temperatures under 600° F."

The Powers patent, the principal patent upon which claims 13 and 31 to 35, inclusive, were rejected (it being also one basis upon which claim 30 was rejected), relates to an apparatus for burning liquid fuel, being particularly "concerned with apparatus for heating water by means of liquid fuel." It discloses (here as elsewhere we paraphrase parts of the description given in the specification) a base section which supports a cylindrical boiler that surrounds a combustion chamber having therein a burner and a hot water storage section. The mechanism which supplies the fuel and the air includes a motor which drives a rotatable head included in which is a plurality of fan blades. A central cylindrical member (also designated as the "central flue") extends upwardly from the fire chamber through the boiler, in which member there is mounted a spiral baffle. Secured to the central member is what is designated in the specification as a flue member which has a horizontal portion adapted to be connected to a flue gas exhaust pipe "in any manner known." The boiler comprises a double walled body having an inwardly extending lower portion which supports the fuel burning apparatus and also constitutes the hearth of the furnace. The boiler section is provided with an opening for inspection which opening is closed by a door. In the head there are several fuel delivery nozzles inclined slightly upwardly. To the lower end of an element in the storage section of the boiler there is secured "as by welding or a like operation" a plurality of lug members. The upper and lower heads of the storage section of the boiler are secured in their places by welding as is the central clyindrical member. It is recited in the specification that the spiral baffle is preferably mounted within the central flue of the storage chamber in order to retard flow of the flue gases so that the greater part of the "utilizable heat" from such gases is transmitted into the water contained in the storage tank.

The Valjean patent, which is for an oil burning device, appears to have been cited merely to show that it is old in the art to have a plurality (four are shown in the patent) of exhaust pipes extending from a combustion chamber through a water chamber. The flue leads to a compartment from which the products of the combustion which heat the water may escape to a chimney or outlet flue through an exhaust pipe extending from the compartment.

The Bock patent, the specification of which states that it relates particularly to an ignition device for an oil burner, discloses what is defined as a "pot type oil burner." The fuel burns in a heating chamber and the products of combustion pass through a flue in a water heater tank.

The Bowen patent is for a device for effecting heat interchange. Its specification recites that the invention has for its foremost object the efficient generation of steam for power purposes, but states that it is no wise limited to that or any other particular application of the principle of heat transfer. Other objects are stated,

but they do not appear to be relevant to the issue before us.

Structurally there is disclosed a mixing chamber into which the ingredients of a combustible mixture (the patent is limited to gas and air, while the application here specifies use of oil and air) are admitted through separate inlets. From the mixing chamber the combustible mixture passes into a flared combustion chamber through a communicating inlet preferably formed with a narrow neck or orifice. A spark plug with its electrodes exposed is arranged within the combustion chamber which chamber and a part of an exhaust conduit adjacent thereto are surrounded by a boiler. The exhaust conduit in which there is a spiral refractory deflector, or baffle, "leads from the combustion chamber to any desired point and preferably delivers the exhaust products to a turbine, not shown, or other source of power production." It is stated in the specification that the deflector becomes red hot and radiates heat against the wall of the exhaust pipe. It is also stated:

"This embodiment of my invention can be operated in two ways, either by a merely combustible mixture or one of the proportions of which render it explosive. Where the mixture is merely combustible, it burns continually within the combustible chamber after having once been ignited by the spark plug. In this instance the pressure of the exhaust product would be comparatively low. When the mixture is explosive the refractory deflector is heated by a succession of explosions, it being necessary in this case to connect a timer, not shown, to the spark plug and fire the mixture at regular intervals. When the explosion takes place the unburned portion of mixture is driven back temporarily through the orifice 5, a violent heat being imparted to the refractory deflector and the exhaust products possessing considerable pressure and, therefore, power possibilities.

"It is obvious that the specific details of construction and configuration of parts described herein may be modified in various ways without sacrificing the advantages of the invention or departing from the scope thereof as defined in the appended claims."

Claim 13 was rejected on the patent to Powers taken with the respective patents to Bock and Valjean, it being held, in substance, that it would not involve invention to substitute a pot type burner such as that disclosed by Bock for the burner disclosed by Powers, nor in using a plurality of vertical flues such as those shown by Valjean instead of the central flue disclosed by Powers.

It was the view of the board that structurally claim 13 is met by the references; and that the only difference between the claim and the references consists of a functional statement. We hereinafter discuss the functional phrase of the controversy.

Claims 31 to 35, inclusive, stand rejected for the same reasons, the same references being relied upon as claim 13, with the addition of the Bowen patent as an additional secondary reference, seemingly because of its disclosure of the use of a "short [sic] spiral baffle" (actually referred to in the patent as a refractory deflector), which apparently was thought to resemble the baffle of the application more closely than does the baffle of Powers. It was said by the Primary Examiner in a statement, purporting to be made under the then Patent Office Rule 137, that the term "short" was used inadvertently in his explanation of claim 31, and that it was intended to state that the Bowen patent disclosed a baffle which terminated a substantial distance below the top of an exhaust tube similar to the corresponding structure in appellant's device. The board seems to have overlooked this statement of the Primary Examiner, and attributes to him the position that there would be no invention "in using short baffles, as suggested by Bowen, for the baffle 40 of Powers."

Method claim 14 was rejected by the examiner upon the patent to Bowen alone. He also rejected claim 30 upon Bowen alone and further rejected it upon Powers alone.

The board's discussion of claims 14 and 30 reads as follows:

"Claims 14 and 30 were rejected for lack of invention over the patent to Bowen. In this patent gas and air are forced into the

382

combustion chamber 4 under pressure high enough for the flames to strike the baffle 14 and heat it red hot. To substitute oil and air, as used by Powers, for the gas and air used by Bowen is not believed to be inventive and that is all that seems to be necessary to meet appellant's method of operating his oil fired boiler. The rejection of claims 14 and 30 is, therefore, sustained.

Claim 30 was also rejected for lack of invention over the patent to Powers. We agree with the Examiner that no invention would be involved in so increasing the combustion rate in Powers as to fill his combustion chamber with flames, it being noted that the baffle 40 of Powers will throttle the flow of gases down from the pressure in the combustion chamber to that in the chimney. The same rejection, we believe, applies to claim 14."

It should be borne in mind that appellant's method calls for the use of oil as a fuel element, while the Bowen patent makes no reference to oil, gas only being named as one of the ingredients of the combustible mixture. Powers, however, teaches the use of liquid fuel oil "in the form of unatomized droplets."

It may be said that both the Valjean and Bock patents (neither of which has method claims) show the use of oil, but they were not cited as references against claims 14 and 30.

From the foregoing descriptions, it is apparent that appellant's apparatus broadly comprises elements found in different patents issued prior to the filing of his application and listed as references upon which the rejection of his claims was primarily based. This is conceded in the brief for appellant in which it said (the italics being quoted): "The heating plant and its operation claimed herein involves, in addition to details to be discussed later, *three basic features* in combination, namely (A) a boiler with fire box, plurality of flues and a chimney connection, (B) a vaporizing, pot type oil burner of the forced draft type operating under positive pressure in the fire box, and (C) baffles in the flues which so impede the passage of products of combustion as to maintain the positive pressure in the fire box and produce a draft loss such that negative pressures may be had at the base of the chimney —and this combination (whether considered in its structural or method aspect) cannot exist apart from that intangible 'combustion'.".

After some discussion which is hereinafter quoted, the brief, referring to pages of the record, continues (italics quoted): "*Applicant has* right along *conceded* that boilers with fire boxes, flues and chimney connections were old * * *, that the forced draft, vaporizing, pot type oil burners for firing boilers was old * * *, and that spiral baffles had been put into the boiler flues * * *. There is no doubt but that such a boiler with fire box, flue and chimney connection and burner (etc.) have been used in combination. Indeed any forced draft, vaporizing, pot burner fired boiler would have these, and they are in common use."

Appellant, however, asserting that the board "appears to clearly indicate that they do not find any one of the prior art references to be completely anticipatory of the claims," argues that "resort must be had, if the claims are to be defeated, to the theory that the invention is obvious from the teachings of the prior art," and insists, in effect, that such obviousness does not exist.

It is said with emphasis that appellant's claimed invention is a complete integrated home heating plant of the water or steam type, fired by a vaporizing, pot type oil burner; that an integrated heating plant (which the brief states is not broadly new) "differs from the more common conversion heating plant * * * in that the oil burner, fire box, the boiler per se, the flue passages and all other parts are designed both physically and from the functional point of view to effect an over all operation." In connection with the statement as to the three basic features of the involved apparatus hereinbefore quoted, the brief for appellant states (italics quoted): "* * * Here we have a *dynamic* combination not a *static,* non-operating structure, without a law or mode of operation. We have an active combination incapable

of use without combustion and whose law or mode of operation is dependent upon the burning of fuel at a rate sufficient to create and maintain the pressures and pressure relations required by the claims to be discussed. All these elements must be concurrently present and in use and correlated to function as intended, for in no other way will the complete results be achieved. All must cooperate like any other dynamic combination such as a steam engine, a gas engine, a pump, a broadcasting station and radio receiver, a light source and prism, a subject and the photographic plate, etc."

Taking it all in all, appellant's contention, as we understand it, is not that any specific feature or specific features render his apparatus and the disclosed method of operation patentable, but that an inventive concept—something more than mechanical skill—was present in combining, as appellant did, into an integrated apparatus the several features shown by the prior art, each of which features apparently required some modification, in order to enable the device to function as it does function.

It is well settled, of course, that there may be a combination of several patents, taking specific features from different ones, in the rejection of claims; and it is equally well settled that it may require use of the inventive faculty—that is, something more than mere mechanical skill—to combine features taken from different disclosures found in prior art in order to produce an operative and useful mechanism.

In such cases the difficulty frequently arises of determining the often shadowy and indistinct line of demarkation between mechanical skill and creative genius.

That appellant here has developed an operative and useful apparatus which is reflected in the structural claims is not questioned. The board conceded that it is "probably an efficient and effective device," but denied its patentability. In a decision on a petition for reconsideration the board said: "The selection of the proper size pot type burner and of the proper size blower and the installation of the proper size baffles * * * is held to be a matter of choice or design involving no invention."

As already has been indicated, the board held that claim 13 differs from the references only by what it designated as a functional statement. That portion of the board's decision reads: "* * * The difference between the heating plant, as defined by claim 13 and the structures of record appears to reside in the functional qualification that the baffles are effective 'when the burner operates at high fire to retard escape of heated products of combustion and keep the pressure in the combustion chamber above atmospheric, and ineffective * * * when the pilot flame only is in operation'. However, it is well established that functional statements alone do not serve to distinguish claims over references which meet the claims structurally. See Ex parte McCulley & Ruehlmann, 1929 C.D. 68; 382 O.G. 3."

In the petition to the board for reconsideration of its original decision, this holding was challenged, it being argued that the quoted phrases are "truly structural in their meaning." No one of the reasons of appeal filed with us, however, makes any reference to this particular item, nor is it discussed in either of the briefs of appellant before us (there was a reply brief of appellant filed by leave of the court), although certain cases are cited in which the courts held, among other things, that under the particular facts appearing therein the "whereby clauses," or their equivalents, there appearing as statements, were deemed not to be functional alone, but, at least, illustratively structural. See Scheinman v. Zalkind, 112 F.2d 1017, 27 C.C.P.A., Patents, 1354.

So, we must assume that appellant finally acquiesced in the board's holding that the recited statement is functional only. This being true, the McCulley et al. case, supra, cited by the board is obviously apropos. The principle is so well established and has been applied so long that no further citation of authorities is deemed necessary.

We think it is also true that the pressure in the combustion chamber, as defined in the claims, concerning which there is much discussion in the brief, is inherent

in the arrangement of elements, or, at least, is a purely functional qualification as was held by the board.

The record in this case, including a large number of documentary exhibits, is somewhat more elaborate than is usual in ex parte cases. The several briefs and arguments used before the tribunals of the Patent Office included in the record have not been particularly helpful to us in considering the case, since they did not tend to clarify the reasons of appeal to us beyond that of the brief filed in this court.

However, we have carefully examined the record and briefs, including the art as depicted in various exhibits and in patents introduced by stipulation, in an effort to understand appellant's contentions.

█ He seems to have insisted below that the Primary Examiner and the board explain just how far one with the prior art references before him, and without appellant's disclosure, could go to provide a structure such as that involved in claim 31, and also that they explain why the features of Powers and Bowen not retained by appellant would have been abandoned, and reason of appeal No. 8 indicates that he does not think those tribunals did so. We know of no rule or statute which required them to do this. In the case of In re Slye, 121 F.2d 512, 28 C.C.P.A., Patents, 1340, which appellant cites in connection with this contention, this court did state that no suggestion was offered by the Patent Office tribunals as to how a certain structural modification which the Primary Examiner held to be obvious could be made, but we did not hold that it was the duty of the tribunals to make such suggestion, nor did we reverse the board's decision because of its failure to do so, as a careful reading of our decision will disclose.

We do not find any reversible error in what the tribunals did or failed to do in respect to that phase of the instant controversy.

█ The briefs for appellant cite a large number of decisions on various points elaborated in the brief (not all of which are so asserted in the reasons of appeal as to render their consideration by us proper) and these have been studied where seemingly relevant. Among those studied are In re Raytheon Manufacturing Company et al. v. Coe, Com'r Patents, 68 App.D.C. 255, 96 F.2d 527; In re Spencer, 47 F.2d 806, 18 C.C.P.A., Patents, 1041; In re Reckford, 62 F.2d 842, 20 C.C.P.A., Patents, 826; Scheinman v. Zalkind, supra; Application of De Lancey, 159 F.2d 737, 34 C.C.P.A., Patents, 849.

We do not find the facts of the instant case sufficiently similar to those of any of the foregoing cases, or to any of the several others studied, to justify holding that the decisions of them are controlling, or even persuasive here.

It is believed that there is no reversible error in the decision of the board and the same is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.