43 C.C.P.A.(Patents)

**Application of Arnold John EDWARDS.**

**Patent Appeal No. 6147.**

United States Court of Customs and Patent Appeals.

April 18, 1956.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City (C. M. Fisher, Washington, D. C., and M. W. Sage, New York City, of counsel), Clarence W. Moore, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable claims 26 and 28 through 34, inclusive, the only remaining claims in appellant's application for a patent for "*Production of Aluminum Fluoride.*" The appeal has been withdrawn with respect to all claims except claims 26, 30 and 34, which are the only claims before us.

The appealed claims pertain to a method for producing aluminum fluoride ($AlF_3$) by passing hyrogen fluoride gas through a chamber having three superposed separated beds or layers of solid particles of aluminous material, such as alumina or aluminous hydroxide. A fluidizing technique is employed. The fluidizing technique consists of passing the gas through each layer of particles at such a velocity which will cause it to be in a state of turbulent suspension resembling a boiling liquid thus insuring complete mixing between the gas and the particles. A counter current flow is employed in the process in the sense that the gas is introduced at the bottom of the chamber and is passed upwardly through each of the three layers in the chamber whereas the solid particles are fed downwardly from the uppermost layer to the central layer and then to the lowermost layer. The reaction between the gas and the particles is exothermic, and occurs primarily in the central layer. The particles which are fed into the fluidizing chamber from a suitable source are preheated and partially dehydrated in the uppermost layer by the hot gases coming from the central layer. In the lowermost layer, the heated particles which come from the central layer are finally reacted and cooled by the gases coming into the fluidizing chamber.

Claim 26 is representative of those appealed, and reads as follows:

"26. A method of preparing aluminum fluoride which comprises passing hydrogen fluoride gas upwardly through three zones, which in inverse order to the direction of gas flow comprise an upper preheating and dehydrating zone, an intermediate main reaction zone, and a lower final reaction and cooling zone, each zone comprising at least one bed of solid particles of aluminous material selected from the group consisting of alumina and aluminum hydroxide, causing said gas to flow through said zones in such volume and at such velocity as to maintain the particles in each bed in a state of turbulent suspension resembling a boiling liquid whose surface level, though agitated, is fairly clearly defined, maintaining a free space above each bed to receive the gas after it has passed upwardly through the bed, causing the aluminous material to overflow from the preheating and dehydrating zone and to be delivered to the main reaction zone, causing the aluminous material to overflow from the main reaction zone and to be delivered to the final reaction and cooling zone, and maintaining the temperature in the main reaction zone between about 400°C. and 650°C. and higher than the temperature in the preheating and dehydrating zone and in the final reaction and cooling zone, the temperature differential between the main reaction zone and the final reaction and cooling zone being such as to cause appreciable cooling of material overflowing from the main reaction zone and delivered to the cooling zone, the temperature in the preheating and dehydrating zone being maintained above about 250°C. by heat exchange with gas passing therethrough from the main reaction zone."

The references relied on are:
Gitzen et al., 1,937,885, Dec. 5, 1933;
Osborne et al., 2,020,431, Nov. 12, 1935;
Murphree, 2,436,870, Mar. 2, 1948;
Hemminger, 2,444,990, July 13, 1948;
Murphree, 2,459,836, Jan. 25, 1949;
"Fluidization in Chem. Reactions," Kal-

bach, pages 105–108. Chem. Engineering, Jan. 1947; "Fluid Solids", page 306, Journ. of Chem. Ed. (Ad.Sec.) Vol. 24 #6, page 306, June 1947.

The Gitzen et al. patent teaches the method of making aluminum fluoride by passing hydrogen fluoride gas through a chamber containing particles of an aluminum compound capable of reacting with said gas. The patent teaches the use of a water jacket around the chamber and other cooling means for controlling the temperature of the reaction. The patent states:

> "While calcining all the aluminum hydrate is desirable, it is not necessary, and in order to initiate the reaction it is sufficient, where the reaction is carried out in vertical reaction vessels, to place in the bottom of the vessel a layer of calcined hydrate, the reaction between which and the incoming gas will be sufficient to produce an initiating heat to start the exothermic reaction which will then continue whether or not the remaining material entering the reaction zone be initially calcined."

The process is a continuous one in which raw material is fed to the chamber from a hopper, and the finished aluminum fluoride is discharged from the chamber by a suitable valve mechanism.

The Hemminger patent discloses fluidizing apparatus consisting of a chamber containing a plurality of superposed and separated layers of solid particles to be reacted with a gas. A countercurrent flow is employed in the apparatus whereby the particles flow downwardly from the uppermost layer to successively lower layers while the incoming gas flows upwardly from the bottom of the chamber, through the layers of particles, and out through the top of the chamber. The patent specifically states: "One of the important features of the invention is the counterflow heat exchange of gases and solids which may be employed for heating or cooling either." The patent further states: "By adding or removing heat in the heat transfer tubes, any temperature gradients in the tower may be maintained."

The Journal of Chemical Education sets forth in general terms the objectives and advantages of the fluidizing technique as follows:

> "In a fluidized system, a gas is passed upwards through a mass of powdered solid, so that the particles are 'floated' and the mass somewhat resembles a boiling liquid in appearance. The objective may be to react the solid with the gas or to react the components of the gas under the influence of a solid catalyst. A portion of the particles may be quite coarse, but material of finer particle size should also be present, for otherwise the gas velocity which will float the particles is dangerously close to that which will blow them out of the reactor. The particles of solid, suspended in a gas, flow through pipes and other equipment much as would a liquid and can be easily moved from one operation to another. Continuous operation, often resulting in a more uniform product and lower operating costs, may be more easily achieved with this system than with conventional apparatus. By virtue of the rapid movement of the particles, the temperature of a fluidized bed may be maintained at an extraordinarily uniform level, often a vital factor in chemical synthesis."

The Chemical Engineering publication sets forth the advantages and applications of a fluidizing process as follows:

> "Advantages of Fluidization
>
> "1. Excellent temperature control—the body of solids serves as a thermal flywheel.
>
> "2. Excellent temperatures uniformity—rapid mixing and frequent contact of the particles eliminate hot spots.
>
> "3. High heat transfer rates—of the order of those obtainable with boiling liquids.

"4. High reaction rates—small particles mean increased surface for reaction which surface is kept relatively free of gas films by the sweeping action of the fluidizing gas and by frequent collisions of particles.

"5. Possibility of moving large quantities of solids cheaply—amply demonstrated by present 'cat crackers'; these solids can be thermophores as well as not.

"6. Maintenance of a deep bed at reaction conditions—compare a non-fluid bed of solids moving slowly in counter-current relationship to a stream of gas; there will exist a high temperature zone preceded and succeeded by lower temperature zones where completion of the reaction may not be possible.

"Applications

"It may be said that those processes in which fluidization is most likely to be used to advantage are the ones in which the conspicuous improvement is possible by one or more of the following:

"1. Improving temperature control, thereby (a) preventing undesirable side reactions, (b) preventing loss of raw materials as by sintering of residues and (c) improving quality or uniformity of product.

"2. Improving heat transfer, thereby (a) increasing capacity and size of units, (b) reducing external temperature on vessel and (c) replacing external heating with thermophore.

"3. Increasing reaction rates, thereby (a) Increasing capacity of units and (b) Lowering reaction temperatures."

The Murphree patent, number 2,436,-870, insofar as pertinent here, relates to a fluidizing technique employed in the production of chlorine. Multi-bed fluidizing apparatus of the same character as described in the Hemminger patent is shown in Murphree. In the patent specification, it is stated:

"In the various reaction zones, according to the invention, the gas-solid dispersions are maintained in relatively turbulent conditions. Thus, the solid reactants are assured of intimate contact with their respective reactant gases and the temperature in each reaction zone is substantially uniform throughout. The reaction zones may be fitted with special contacting devices resembling bubble trays. Furthermore, means are provided within or external to the reaction zones for cooling or supplying heat as required by the recirculation from other portions of the processing equipment or by recirculating of the fluidized solids through heat exchange devices."

The Murphree 2,459,836 and Osborne et al. patents were not considered by the board as being particularly pertinent. We will accordingly not treat them in this opinion.

All of the claims were rejected by the Primary Examiner "as lacking invention over Gitzen et al. in view of the acknowledged or cited fluidizing techniques as taught, for example, in Hemminger, Osborne, and Murphree * * *." The publications were stated to be pertinent fluidizing art. The pertinent portions of the examiner's rejection are as follows:

" * * * It is obviously old as shown in the primary reference Gitzen et al to prepare $AlF_3$ by the reacting of identical aluminum containing material, i. e. the oxide or hydrated oxide, with the same gaseous halogenating agent, hydrogen fluoride gas, in a main reaction zone having a temperature of the order claimed. The HF gas according to the patent is also adapted, like applicant's process to pass upwardly through the gas adsorptive and reactive aluminous material. It is also plainly apparent from this patented disclosure that the upper portion in chamber 10 of the reference will inherently effect a preheating and dehydration of the aluminous

material being introduced through 11 since the reaction in the central portion of chamber 10 between the aluminous material and HF would, of course, be intensely exothermic and hence liberating much heat. That the lower zone of the apparatus of Gitzen et al is relatively cooler than the central or upper portions of the chamber is also evident since the formed $AlF_3$ as it passes downwardly through 13 would inherently become at least somewhat cooler since it would then be relatively free from the heat producing causes. Moreover, it is also indicated in the reference (see page 2, right) that if control of temperatures is necessary e. g. to prevent overheating, that external means may be easily provided and is also *enviaged* by the patentees as within the skill of one in the art. No limitation of patentable moment or inventive novelty is considered to be recited in the claims. * * * The crux of the contended invention insofar as the examiner has been able to determine is in the substitution of the fluidizing techniques employing a multiplicity of beds 'in accordance with the established practice in the application of the fluidizing technique to other' of the chemical art (see spec. page 3). No patentable merit or inventive skill, however, would be involved over the prior art preparation of $AlF_3$ as done by Gitzen et al. by the adapting or substituting of the fluidized solids-gas system technique since the numerous advantages obtained by this countercurrent system technique with its attendant economies, rapidity of reaction and better control are now so well known as to have almost general application to chemical process involving a solid-gas contacting. Appellant himself acknowledges, starting with last full paragraph of specification page 3 and ending in middle of specification page 4, that he is employing fluidizing apparatus of the general type already well known to be useful in other arts of the chemical field and which comprise a plurality of beds to operate broadly in the manner disclosed. Hemminger in particular shows the advantages of contacting solid reactive particles with gaseous fluids broadly, including halogenation of solids by chlorination, employing a multiplicity of beds and a similar countercurrent gas-solid fluidizing technique. * * *"

The foregoing rejection of the claims was substantially adopted by the Board of Appeals. However, the board gave more weight to the Hemminger patent than did the examiner. In this respect, the board stated:

"Hemminger refers, in the paragraph beginning at line 51 of column 7, to 'the counterflow heat exchange of gases and solids which may be employed for heating or cooling either.' Hemminger states that the physical manipulations disclosed by him may be employed in solid-gas reactions generally. (See column 8, first 10 lines.)

"It appears to us that the modification of the Gitzen et al. process by the use of physical manipulations and instrumentalities disclosed by Hemminger provides a substantial anticipation of claim 26 here on appeal, and that such modification is without inventive significance, and is to some extent suggested by the general statements of Hemminger (top of column 8) and the Kalbach and Journal citations.

"To recapitulate, Gitzen et al provide the middle reaction zone and conditions required in claim 26, and also inherently provide pre-heating and dehydrating zone. This reference also provides a heat exchange between the incoming hydrogen fluoride gas and the reaction products, which to some extent at least provides a 'final reaction and cooling zone' as required in the claim, although that zone is not distinctly

separated from the reaction zone. In the use of the instrumentalities disclosed by Hemminger, no invention would be involved in taking advantage of Hemminger's feature of 'countercurrent heat exchange,' and the three distinct zones referred to in the claim will inevitably follow. It is noted that the cooling zone of claim 26 is also in part a reaction zone. In Gitzen et al, substantially the entire reaction zone is also used as a heat exchange or cooling zone. The substitution of Hemminger's countercurrent heat exchange is considered an obvious expedient."

The broad question before us on appeal is whether the improvements appellant has made in the process of Gitzen et al. involve patentable invention in view of the teachings of the prior art patents describing fluidizing techniques for reacting a solid with a gas. An ancillary question which we must also consider is whether the references were properly combined. This question is presented by appellant's statement, "If the Examiner and the board had not been prompted and aided by the *ex post facto* wisdom of appellant's disclosure, they would never have combined the prior art disclosures into the method recited in the appealed claims."

■ It is well settled that prior patents may be combined to anticipate claims. In re DeLancey, 177 F.2d 377, 37 C.C.P.A., Patents, 760. However, a question which should be considered when references are combined is whether these references suggest doing the thing which applicant has done. In re Fridolph, 134 F.2d 414, 30 C.C.P.A., Patents, 939. It has also been stated that when references are combined to negate patentability, it should be considered whether one skilled in the art with the references before him could have made the combination of elements claimed without the exercise of invention. In re Goepfrich, 136 F.2d 918, 30 C.C.P.A., Patents, 1181. Furthermore, a claim may be sometimes properly rejected on a combination of references even though

that combination does not show all the limitations in the claim, providing such limitations as are not shown are not inventive and patentable over the disclosures of the prior art. In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982; In re Oakes, 140 F.2d 669, 31 C.C.P.A., Patents, 833.

The foregoing law is, in our opinion, determinative of the question of whether the references were properly combined. An analysis of the facts of the present case in the light of the above-cited law is therefore in order. Gitzen et al. disclose a process of producing aluminum fluoride by reacting an aluminous solid with hydrogen fluoride gas. There is no doubt that the secondary references suggest that it may be very desirable and technologically advantageous to employ a fluidizing process whenever a solid is to be reacted with a gas. We are therefore of the opinion that the secondary references would have readily *suggested* to one familiar with the Gitzen et al. process, which relates to a process of reacting a solid with a gas, that a fluidizing technique, such as shown by the secondary references, could advantageously be employed in conjunction with the Gitzen et al. process. Since it is our opinion that it would have occurred to one skilled in the art that the fluidizing technique could be advantageously applied to the Gitzen et al. process, it is therefore our conclusion that the references were properly combined.

■ Appellant contends that "No teaching or suggestion in the prior art would have prompted any skilled worker to provide *three separate and distinct fluidized beds* maintained at *different temperatures* for *different purposes."* The question therefore arises as to whether this is inventive. Gitzen et al. teach that, in addition to the actual production of aluminum fluoride, dehydrating of the solid material can be accomplished when it is placed in the reaction chamber. Thus, as held by both the examiner and the board, there are inherently two reaction zones in the Gitzen et al. process. Gitzen et al., however, do not

clearly teach the use of a final reaction and cooling zone. The Hemminger patent teaches that temperature gradients may be maintained at different levels in a fluidizing process, and that counter-current heat exchange of gases and solids may be employed in heating or cooling either. Notwithstanding that Gitzen et al. do not specifically teach a final reaction and cooling zone, we do not feel, and appellant has not shown, that this step is inventive as contrasted to being merely novel. It is our belief that when compounds are reacted, it is generally desirable to have a complete reaction. Furthermore, it seems to us that it would be generally desirable to cool a heated reaction product after the reaction has been completed. Since appellant has not pointed out how the step of completing the reaction and cooling is inventive in the present case, we must assume that this step is but a generally desirable incident of the process of making aluminum fluoride. The fluidizing technique, as shown by the prior art, has certain known advantages, namely, that it allows the maintaining of different temperatures in different portions of the fluidizing apparatus, and that it permits heat exchange to be accomplished. To utilize these conventional aspects of the fluidizing technique to provide a final reaction and cooling zone is, in our opinion, not inventive since the fluidizing technique readily lends itself to maintaining temperature gradients and heat exchange. Since we are of the opinion that the final reaction and cooling step represents an unpatentable variation over the prior art, and since the other features of claim 26 are shown by the prior art, we conclude that the feature recited in the claim which is not shown in the prior art cannot render the claim patentable because it is not itself inventive. In re Oakes, supra; In re Bisley, supra.

It is to be noted that claim 30 is dependent on claim 26, and recites that "the gas velocity is decreased before emerging from the bed of the preheating and dehydrating zone in order to drop fines carried by the gas back into the bed of that zone." We are of the opinion that this limitation is not patentably significant, and we are in agreement with the examiner's reasoning that this limitation relates to the mere working out of a technological detail which is within the normal routine or skill of a chemical engineer.

Claim 34 is similar in scope to the above-discussed claims, and is unpatentable, in our opinion, for the same reasons given above.

The appeal as to claims 28, 29, 31, 32, and 33 is dismissed, and the decision of the Board of Appeals as to claims 26, 30, and 34 is affirmed.

Affirmed.

O'CONNELL, J., was present at the argument of this case, but, by reason of illness, did not participate in the decision.