28 C.C.P.A. (Patents)

### In re PINKERTON.
### Patent Appeal No. 4403.

Court of Customs and Patent Appeals.

Dec. 9, 1940.

Pennie, Davis, Marvin & Edmonds, of New York City (Louis D. Forward and Merton S. Neill, both of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner rejecting, for want of patentability over the cited prior art, claims 1, 4, 5, 6 and 8 of appellant's application for a patent. Claims 2, 3 and 7 were also rejected, but are not included in this appeal. No claims have been allowed.

Claim 4 is illustrative of the claims before us and reads as follows: "4. In the production of polymerized olefins wherein a heated gaseous mixture containing a substantial amount of higher olefins and at a temperature approximating 450°–550° F. is passed in contact with a catalyst and the product resulting from the catalyzing operation is subjected to fractional separation in a stabilizing chamber, the improvement which comprises withdrawing from the stabilizing chamber at least a portion of a fraction containing a substantial quantity of butylene, and introducing said portion into the catalyzing operation together with fresh heated gaseous mixture containing a substantial amount of higher olefins."

The references cited are: Fitch, 2,072,745, March 2, 1937; Wagner, 2,088,824, August 3, 1937.

In a request for reconsideration of the decision of the Board of Appeals appellant's alleged invention is concisely described as follows:

"Perhaps applicant's invention can be most concisely defined as involving a novel and meritorious *modification of a conventional* catalytic polymerization process conducted at *conventional* temperatures and wherein there is a *conventional* recirculation or recycling of unpolymerized material vaporized in the stabilizing operation, including butylenes, propylenes and hydrocarbons even more volatile than butylenes and propylenes (e. g., ethane and ethylene). The applicant's novel modification of this conventional practice consists in segregating, from the vaporized material usually recycled as a composite mixture, a special fraction to be recycled. The special characteristic of this special fraction is not merely that it shall *contain* butylene and propylene and the like but that it shall contain a *substantial quantity of butylene* in preference to propylene and more volatile hydrocarbons so that *by this recycling* the ratio of *butylene to propylene* in the

catalytic reaction zone *may be increased* and thus brought closer to that ratio which presents optimum conditions for propylene polymerization in the catalyst contact zone.

"Normally the theoretical ultimate of this improvement would involve segregation and recirculation of butylene alone. In practice this ultimate can only be approached, because the boiling points of butane and butylene differ by only 6 degrees. Therefore in practice the butylene fraction will include considerable butane. Furthermore, in apparatus used for commercial practice of processes of this type the butylene fraction will contain lesser quantities of propane and propylene in addition to some butane, *but the objective is to fractionate the material vaporized in the stabilizer so as to obtain, for recycling,* a material which has been made *richer* in butylene and *leaner* in propylene, propane and the like.

* * * * * *

"From the foregoing we believe it will be apparent that the essence of the invention involves *the selection* from the material vaporized in the stabilizing operation (as by fractional condensation to form a side stream) of a particular fraction to be recycled and in which the *concentration of butylenes has been substantially increased;* thus making it possible *by the recycling* to adjust the butylene ratio in the catalyst contact zone in a direction more desirable with respect to propylene conversion." (Italics throughout quoted.)

The patent to Fitch does not seem to have been relied upon by either the examiner or the board, in so far as the claims before us are concerned. The examiner relied in part upon this patent for the rejection of claims 2 and 7, which are not before us. Therefore no description of the Fitch patent is necessary.

The patent to Wagner discloses essentially the same process as that recited in appellant's specification except that Wagner recycles all of the volatile compounds (including butylene and propylene) accumulated in the top of the stabilizer in the form of vapors or gases, while the process disclosed by appellant recycles only a fraction of the accumulated gases in the top of the stabilizer, which fraction, appellant states, "contains a substantially increased concentration of butylenes," as compared with the composite mixture of gases eliminated from the polymer gasoline in the stabilizing operation.

While the process disclosed by Wagner primarily relates to a thermal type of polymerization process employing very high temperatures, the board in its decision stated: "* * * Appellant draws a distinction between a polymerizing process in which a catalyst is used as distinguished from a process where heat and pressure conditions are such that polymerization takes place without a catalyst. However, the Wagner patent relied on as the principle reference distinctly refers in the fourth paragraph, page 1, to a treatment wherein the gases to be treated are polymerized in the presence of a catalyst or without the presence of a catalyst and under certain temperature and pressure conditions. Although we note that appellant's temperature range is lower than that set forth in this paragraph, yet that may imply with a catalyst present a lower temperature is satisfactory and those skilled in the art would appreciate that fact."

It will be observed that claim 4 recites that the product resulting from the catalyzing operation is subjected to fractional separation in a stabilizing chamber, and that appellant's improvement comprises withdrawing from the stabilizing chamber "at least a portion of a fraction containing a substantial quantity of butylene" and recycling the same into the catalyzing operation.

There can be no question that Wagner discloses fractional separation in the stabilizing chamber of the product resulting from the catalyzing operation, and he specifically states that the fraction consisting of composite gases comprises butylene and propylene. True, the result of his fractionation results in but two components, one the stabilized liquid gasoline and the other the composite gaseous mixture which is recycled into the catalyzing operation, but this mixture contains butylene.

That this composite mixture is a fraction containing butylene is acknowledged in appellant's brief wherein it is stated: "It is of course true that the fraction which Wagner recycles will contain both propylene and butylene since these materials must be eliminated from the unstable gasoline in order to produce a stable gasoline. Furthermore, it is of course true that some conversion of the butylene and propylene recycled in Wagner may occur. But the fraction which Wagner recycles is necessarily lean with respect to butylene so that the Wagner recirculating operation *impairs*

rather than *improves* the butylene to propylene ratio in the polymerization zone." (Italics quoted.)

Appellant's specification, in reciting the prior art, does not state that the fraction recycled to the catalyzing chamber, as disclosed in such art, does not contain a substantial quantity of butylene. Upon this point appellant merely states that by his process he obtains a mixture for recycling "which contains a substantially increased concentration of butylenes." Of course a substantial quantity of butylene in a mixture might be substantially increased by resort to a certain feature of appellant's process not embraced in the claims, viz., the separation of the composite mixture of gases at the top of the stabilizing chamber and the withdrawal of a specified portion thereof.

That appellant's counsel considered this feature as the essence of appellant's alleged invention is shown by their brief, wherein it is stated: " * * * *fractionation of the composite mixture normally eliminated from the unstabilized polymer gasoline in the usual stabilizing operation,* to obtain therefrom a fraction which has been made *richer in butylene* for the purpose of recirculation through the catalyzing zone is of the *very essence* of the invention. It is only by such fractionation that it is possible to adjust, *by such recirculation,* the ratio of butylene to propylene in the catalyzing zone in a direction *toward* rather than *away from* the optimum ratio." (Italics quoted.)

▮ We are in agreement with the views of the Patent Office tribunals that claims 1, 4, and 8 are unpatentable over the Wagner reference. They clearly read upon Wagner except for the word "substantial," and we do not believe that this word has any patentable significance under the circumstances.

Claims 5 and 6 differ from claims 1, 4, and 8 principally in that it is recited in claim 5 that at least a portion of a fraction containing butylene is introduced into the catalyzing operation "in such a quantity as to produce an optimum concentration of butylene in the catalyzing operation;" and in claim 6 it is recited that at least a portion of a fraction containing butylene is introduced into the catalyzing operation "in such an amount as to produce an optimum ratio between the quantity of propylene and butylene in the catalyzing operation."

With respect to these limitations the examiner in his statement stated: "Claims 5 and 6 have limitations as to the effect that the recycling of the butylene or propylene and butylene fractions is conducted to give optimum concentration of butylene or an optimum ratio of propylene to butylene. According to claim 8, a portion is recycled and another portion is removed to storage. These limitations do not present patentable distinctions over the prior art since they involve mere details of operation that are within the purview of the man skilled in the art. Simple experimentation is sufficient to determine optimum conditions of operation such as temperatures, pressures, catalyst concentration, ratio of reactants, and so on."

With respect to the last sentence in the above quotation appellant's counsel in their brief state: "As to this ground of rejection appellant points out that the temperatures, pressures and catalyst concentration employed in his process are in no sense novel and have never been relied upon for patentability. Moreover appellant is not attempting broadly to cover control of the ratio of the reactants. For example appellant's claims have nothing to do with any control of the ratio of reactants that might be accomplished by some initial fractionation of the raw gas mixture. A control of this type would be possible, but it would involve a large expense both from the standpoint of equipment required and operating costs. However, we respectfully submit that appellant's specific and unique method of creating a ratio of butylene to propylene which promotes very efficient operation of the low temperature catalyzing operation; namely a control provided by recirculation of a fraction segregated from *a residual material which would impair this ratio if it were itself recirculated,* is an unobvious but meritorious contribution to the art which should be entitled to patent protection." (Italics quoted.)

In view of this statement and our discussion of claims 1, 4, and 8, it is sufficient to say that we are satisfied that claims 5 and 6 are unpatentable over the patent to Wagner.

▮ In conclusion we think it proper to observe that if appellant's application discloses an invention, as to which we express no opinion, the claims before us are so broad as to read upon the Wagner reference. It is of course elementary that limitations which would avoid prior art may

not be implied in claims, even if the application would support patentable claims.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.