In re BARNES et al.

Patent Appeal No. 4824.

Court of Customs and Patent Appeals.

Feb. 7, 1944.

Ellis S. Middleton, of New York City, for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel) for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1, 2, 3, 5 to 16, inclusive, 18, and 19 in appellants' application for a patent for an alleged invention relating to a method of producing ammonium alkali metal ferricyanide.

Six claims have been allowed, three (Nos. 21, 22, and 23) were allowed by the Primary Examiner and Nos. 4, 17, and 20 were allowed by the Board of Appeals.

So far as the issues here are concerned, claim 1 is illustrative of the appealed claims. It reads:

"1. A method of producing ammonium alkali metal ferricyanide which includes reacting in aqueous solution and inorganic ammonium salt and alkali metal ferricyanide."

The references relied upon by the Primary Examiner are: Buchanan et al., 1,667,839, May 1, 1928; Grove, 2,005,698, June 18, 1935.

The appealed claims were rejected by the Primary Examiner on the prior art of record, and also upon the ground that they were broader than appellants' disclosure.

With reference to the latter ground of rejection, the Primary Examiner stated, among other things, that he was "willing to predict that he could perform the tangible operations within the terms specified in typical original claims such as claims 1, 3, 5, and 8 [apparently all the claims on appeal were original claims] without getting any diammonium monoalkali metal ferricyanide (the desired salt). The original claims are not only *too broad* to define anything patentable over the *prior art* but fail to even recite the bare essentials for getting a useful *result of any kind*." (Italics ours.)

On appeal, the Board of Appeals in its original decision held that the references of record did *"not disclose any comparable complex ferricyanide made by any method.* Accordingly, we find the references cited as *not suggestive of the invention."* (Italics not quoted.) The board held, however, that in view of the limitations as to the concentration of the aqueous solutions and the relative amounts of reactants set forth in appellants' specification, claims 1, 3, 5, 8, and 9 to 20, inclusive, were broader than appellants' disclosure, and that claims 2, 4, 6, and 7 were broader than appellants' disclosure because "the concentration of the alkali metal ferricyanide" is not stated therein.

Thereafter, counsel for appellants filed a petition for reconsideration of the board's decision, stating therein, in substance, that appellants' specification did not state that specific conditions as to concentrations and relative amounts of reactants were necessary in order to produce the ammonium alkali metal ferricyanide, although the specification did set forth certain conditions as to concentrations in order to produce ammonium alkali metal ferricyanide more efficiently. An affidavit was also filed for the purpose of sustaining appellants' contentions.

Thereupon, the board reconsidered its original decision and in a decision dated

September 21, 1942, stated that as the affidavit was filed subsequent to its original decision and as it was not the practice under such circumstances to remand a case to the Primary Examiner, the affidavit would not be considered. The board then said:

"However, we agree with the examiner that when broadly stated as in most of the claims the mere reaction of an inorganic ammonium salt or chloride with an alkali metal ferricyanide in aqueous solution will inevitably produce in the aqueous solution some of the double ammonium alkali metal ferricyanide.

"Broadly, the use of an excess of both reactants would be obvious to any chemist if he wanted a reasonable yield in a practicable manner.

"However, we cannot say on this record that it is obvious to hit on the 1:3 ratio of claims 4, 17 and 20.

"The decision of the examiner is reversed as to claims 4, 17 and 20, but is affirmed as to the other claims on appeal.

"The petition is granted to the extent indicated."

No oral argument was presented in this court by counsel for appellants. However, it is stated in his brief that it appears from appellants' specification that the method of producing ammonium alkali metal ferricyanide is a simple one; that all that is required to produce such product is to react in an aqueous solution an inorganic ammonium salt and alkali metal ferricyanide, as set forth in the appealed claims; that it is unnecessary in order to obtain the desired product and secure a useful result to use any particular concentration of an aqueous solution or any particular amount of reactants; and that, in view of the holding of the board in its original decision that "The prior art does not disclose any comparable complex ferricyanide made by any method" and that the references do not suggest the involved invention, the board erred in rejecting the appealed claims.

It will be observed that in its decision on reconsideration of its original decision, the board, as hereinbefore noted, stated that it agreed with the examiner that "the mere reaction of an inorganic ammonium salt or chloride with an alkali metal ferricyanide in aqueous solution [as set forth in the appealed claims] will inevitably produce in the aqueous solution some of the double ammonium alkali metal ferricyanide [the desired product as set forth in the appealed claims]."

Although the board reversed the Primary Examiner and allowed claims 4, 17, and 20, as hereinbefore noted, the quoted statement from the board's decision is obviously inconsistent with the views expressed by the Primary Examiner, and also inconsistent with its rejection of the claims here on appeal. However, it is consistent with the claims made in the brief of counsel for appellants, and also with the explanation of the invention as set forth in appellants' application.

It is true that it is stated in appellants' specification that in order to produce "crystalline ammonium alkali metal ferricyanide per pass" *more efficiently*, the solution of alkali metal ferricyanide "should be reasonably concentrated as otherwise excessive cooling or evaporation or both will be necessary to recover a crop of double salt crystals," and that for "most efficient results, the liquid in the reaction vessel should be substantially saturated in order to insure an efficient crop of double ferricyanide crystals per pass." However, it is also stated in appellants' specification that—

"If the double salt of ferricyanic acid containing ammonium is to be used in the liquid state, a solution of a water soluble inorganic ammonium salt may be added to the solution of the alkali metal ferricyanide or vice versa. The fact that such solutions also may contain unreacted alkali metal ferricyanide, triammonium ferricyanide and inorganic ammonium salts in many cases makes no difference. Such a situation is where the eventual solution is to be used in blueprint or other similar arts where the light sensitiveness of the ferricyanic salt containing ammonium is of advantage. In other situations, however, where a pure or relatively pure ammonium alkali metal ferricyanide is desired fractional crystallization may be resorted to to recover the pure material substantially uncontaminated with other products."

It is true that the claims on appeal are very broad. Nevertheless, in view of the holding by the Board of Appeals that the prior art does not disclose "any comparable complex ferricyanide made by any method" and does not suggest the involved invention, and in view of its statement that "the mere reation of an inorganic ammonium salt or chloride with an alkali

metal ferricyanide in aqueous solution will inevitably produce in the aqueous solution some of the double ammonium alkali metal ferricyanide," and as that statement is consistent with the disclosure in appellants' specification, we must hold that the board erred in rejecting the appealed claims.

The decision of the Board of Appeals is reversed.

Reversed.

