### Application of STROMMEN.
### Patent Appeal No. 4985.

Court of Customs and Patent Appeals.
April 9, 1945.

Hoguet, Neary & Campbell, of New York City (Byron T. Gardner, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed the Primary Examiner in rejecting claim 2 and reversed him in rejecting claim 1 of appellant's application for a patent on a method of fitting hearing aids for the use of persons with impaired hearing.

The applicant has appealed here for review and revision of the board's decision as to claim 2. For convenience of analysis and reference, we here quote claim 2 in step-by-step form:

"2. A sonic method of fitting a deafened person with hearing aid apparatus, which comprises

"(a) determining from his responses the acuity of his *unaided hearing* at a *predetermined distance from a fixed source of sound,*

"(b) emitting signals of predetermined frequency and volume

"(c) in a space containing *background noises normal to the environment of the apparatus* at the time of the fitting,

"(d) fitting the person with a hearing aid apparatus for raising his hearing acuity from the determined level to normal level, and

"(e) repeating the emission of said signals while said person remains

"(f) at *said predetermined distance from said source* and

"(g) under the *same background noise conditions* to determine from his responses the degree of improvement in his hearing acuity with the said hearing aid apparatus,

"(h) whereby the person may be fitted with a hearing aid providing him with substantially normal hearing under normal background noise conditions." [Italics ours]

The sole reference is a patent to Wengel, No. 2,217,394, issued October 8, 1940.

In order to understand the contentions of appellant and of the Solicitor for the Patent Office and the decision appealed from, we think it important to set out briefly the conditions which the applicant here and the inventor of the reference patent were trying to remedy, and the manner in which each of them claimed to have solved the problems involved therein.

Frequently persons with impaired hearing may hear perfectly sounds of certain frequencies and be wholly unable to hear louder sounds of different frequencies. The prior art recognized this difficulty, and means of testing one's hearing acuity for sounds of different frequencies were developed, as well as devices for correcting the patient's hearing in respects in which it was deficient. Often, persons with hearing deficiencies can hear sounds of all frequencies until they are interrupted by so-called background noises. Both Wengel and the appellant sought to determine the effect of background noises as well as the sensitiveness of the ear of the person tested to different frequencies and thereafter to apply a suitable device which would amplify the sounds of the frequencies at which the person's hearing was deficient and not amplify the sound concerning which there was no deficiency, by supplying suitable devices for increasing certain sounds.

Both Wengel and the appellant, when making the tests to determine the patient's inability to hear sounds of certain frequencies and intensities, prepare a graph. Wengel plots two curves on his graph, one representing the threshold of audible hearing and the other the pain level. These curves are determined by varying the frequencies and intensities of the test sounds. The area lying between the curves, according to Wengel, is then "explored". Next, the intensity of his background sound is set at a good average level, determined with reference to the threshold and pain curves, and the test signal is then varied through the full frequency range, the volume of the signal being attenuated

at each test frequency to ascertain the minimum intensity audible to the patient above the background noise. A plotting of the results obtained from this test gives a third curve which represents the hearing response of the hard-of-hearing person to desired sounds under conditions when background noise is present. The appellant plots two curves on his graph, but each is a threshold curve. The first represents the subject's threshold of hearing under ordinary background noise conditions and without the aid of hearing apparatus. The second represents the threshold of hearing under the same external noise conditions but with the aid of hearing apparatus and indicates the relative gain in hearing ability afforded by said apparatus.

Appellant's method, as defined by the appealed claim, is said by him to have reduced to a minimum the possibility of error in testing, by making an initial test of the *unaided* hearing of the patient's acuity to sounds of all frequencies when surrounded by a normal background in which noises from typewriters, automobiles, street cars, machinery, and the like are present. Appellant teaches the making of this initial test where only normal background conditions prevail. Obviously, to be very effective under most circumstances, the locus of such tests would be in more than one place or in different places for different patients. In making this test, the hearing of the patient is *unaided,* and appellant teaches that sounds of certain frequencies are transmitted from a predetermined distance to the patient, who in turn indicates, by a proper button pressure device, his responses to the sound. After his unaided hearing has been tested with respect to his hearing deficiency as to notes or sounds of certain frequencies and volume under natural background conditions and a graph or chart is made of the result, hearing aids providing greater or less volume may be applied to the patient's ears until one is found which takes care of said deficiencies. The patient, while wearing the improvement device, indicates by his responses the improvement as the hearing aid apparatus is applied and adjusted. This second test is defined by clauses (d), (e), (f), (g), and (h) of the appealed claim; and it may be added here that on this latter phase of the case, the Wengel patent, to say the least is very indefinite.

The examiner rejected both claims 1 and 2 with the following statement:

"Claims 1 and 2 are held to be unpatentable over the disclosure of Wengel. This patent discloses a method and apparatus for testing hearing in the immediate area corresponding to normal usage and comprises means for producing a background sound having a substantially uniform frequency distribution and a test sound, or a note of substantially a single frequency, with means for successively varying the frequency of the test sound and for determining at each such frequency the intensity necessary to render the note audible above the back-ground sound.

"Wengel discloses a method which contemplates the testing of a subject's hearing acquity in a room wherein the normal background noise is present first without the aid of hearing apparatus and then providing the subject with a hearing aid apparatus and repeating the emission of signals at the same frequencies and under substantially the same back-ground noise conditions.

"As clearly pointed out by the patentee, on page 1, right line 20, he contemplates producing a background sound in addition to signals which are used in the test. Obviously, the signals of uniform intensity which are used by the patentee may be controlled as to frequency.

"Obviously, the back-ground noise which is present at any particular time depends entirely upon the location of the person being tested. It also should be pointed out that back-ground noise which might produce excellent results because it is of a certain intensity, would result in equipping the person with a hearing device which would not give the desired results if background noises of other intensities are encountered. Since the patent to Wengel clearly teaches a method of testing hearing which is comprised of producing a background sound at the time the hearing is tested, it is believed obvious that this back-ground sound could be made of any desired intensity and could therefore be made to simulate any desired condition while the person's hearing was being tested."

It will be noticed that the examiner stated that Wengel tested the patient's hearing without the aid of hearing apparatus in the presence of normal background noises and later with the hearing

aid under the same background noise conditions. The Examiner took no cognizance of the fact that during the first test (according to our construction of the Wengel patent) before the patentee applied the hearing apparatus, he tested the patient's hearing while wearing headphones or a similar translating device in the presence of artificial background noises only. These facts involve the real points of controversy in this case.

The Board of Appeals, in rejecting claim 2, had the following to say:

"The examiner states that in the patented method the patient is first treated in a room wherein the normal background noises are present without any hearing aid. Appellant, however, contends that this is not correct. From our reading of the patent it is silent on this point but the description as a whole tends to indicate that the first tests are made with head phone 25 or 44 on the head.

"In addition Wengel does not depend upon normal background noises but instead creates an artificial background by means of buzzers and oscillators.

"The affidavits in the record tend to show that the method has met with considerable commercial success.

"We are of the opinion that claim 1 differs sufficiently from the method disclosed in the prior art. At the time of taking the appeal appellant tried to amend claim 2 and this was refused. This claim is somewhat broader than claim 1 for it does not include the repetition of the signal, but it does not exclude tests made while headphones are used. It therefore does [not] distinguish over Wengel." [The word "not" in the last line was later added by the board.]

After final rejection, appellant submitted an amendment to claim 2, which was not entered by the examiner because, as he said, it did not place the application in condition for allowance or in better form for appeal. In its decision on petition for reconsideration, the board stated that it had not considered the proposed amendment to the claim and gave its reason for doing so, with which we agree; and no reason of appeal raises that question here. The amendment, at least in part, sought to clarify the claim in respect to the question as to whether or not the claim excluded a test made with headphones. We

refer to this matter because the Solicitor has suggested that this attempted amendment indicates that appellant's attorney recognized the alleged undue breadth of the claim. The mere fact, however, that the attorney attempted to clarify the claim should not, under the circumstances at bar, be regarded as a confession that the unamended claim should have been construed as having undue breadth.

The board stated that claim 2 is broader than claim 1 in so far as it failed to include the repetition of the signals—which we interpret to mean the repetition of the signals by the patient in the initial test (as provided for in claim 1). The board was of the opinion that the claim did not exclude tests made while headphones were used. The examiner held that Wengel contemplated an initial test without the use of "hearing apparatus". He did not hold, as the board intimates, that the tests of Wengel contemplated the same to be made without the use of headphones. He stated that, in Wengel, the tests of the subject's hearing acuity were "first without the aid of hearing apparatus and then providing the subject with a hearing aid apparatus". Obviously, the examiner meant that during the first test the subject did not wear the hearing aid apparatus for which he was being tested. Appellant before the board questioned the examiner's statement on this subject-matter; and the board erroneously stated that from its "reading of the patent it is silent on this point." It said, however, that "the description as a whole tends to indicate that the first tests are made with head phone 25 or 44 on the head".

While confusing in many respects, we think the Wengel patent as a whole definitely teaches the use of headphones, in both embodiments of the invention, in making the tests, and that such tests are made in the presence of artificially-produced background noises only. That no normal background noises are present is conclusively shown by the fact that the only background noises which can reach the patient are those which are transmitted from the artificial noise-making device to the headphones. With respect to the first embodiment, Wengel says:

"* * * The resultant current in the secondary of such transformer * * * is delivered *to a translating device such as an earphone* * * *, where the current

is transformed into corresponding physical air or sound waves." [Italics ours]

With respect to the second embodiment of his invention, he says:

" * * * The resultant combined currents are supplied by the secondary of the transformer * * * *to the earphone or similar translating mechanism * * *,* where they are transformed into physical sound waves." [Italics ours]

We think the patentee, and this is not disputed by the board, comtemplated transmitting the sound from its source to an earphone or some comparable device adjacent the ear of the hearer. On this disputed point, we agree with appellant that claim 2, in more than one respect, distinguishes from Wengel with regard to the use of headphones; and this is indicated by several features of the appealed claim. We think the claim speaks for itself. In order that the important features of it may be better understood, we have set out the step-by-step provisions of the claim and italicized the features to which special consideration should be given.

In provision (a) is the term "unaided hearing". We think this term clearly excludes the use of an earphone or similar device. The further limitation in (a), "at a predetermined distance from a fixed source of sound", and that in (f), "said predetermined distance from said source", would warrant the conclusion that the claim does exclude the use of earphones in any of the tests appellant gives the patient. A headphone cannot be a fixed source of sound at a predetermined distance from the patient inasmuch as it is worn directly on his ear. The subject is not at a fixed distance from the source of sound because he is in direct contact with the source. Moreover, the claim provides in (c), "in a space containing background noises normal to the environment of the apparatus at the time of the fitting". The "apparatus" of course refers to the hearing aid apparatus, and the "space" is the distance between the patient and the source of sound, or the room in which the test is made.

As we understand the holding of the board, it is that while claim 1 is allowable, claim 2 is not, for the reason that in claim 2 there is no provision for the patient's repeating the signals of the first test, and that therefore claim 2 is broader than claim 1. While it is a settled rule in this kind of case that the allowability of an appealed claim is not controlled by the fact that similar claims have been allowed, In re Zalkind, 28 C.C.P.A., Patents, 959, 118 F.2d 356, it is sometimes necessary to consider allowed claims together with appealed claims where they are referred to in the board's decision and the exact views of the board are to be determined.

The patient's response to the emitted signals in the second test while wearing the hearing aid is provided for in both claims by the language involving the word "responses". In claim 2, with reference to the first test we find the language, "determining from his responses", and in claim 1 this same thought is expressed in the language, "determining * * * by the accuracy of his repetition of each signal". In one claim the determination is made from the patient's responses (which might be by repeating the signal, or by voice, or by some other means), and in the other the determination is made by his repetition of each signal. In one claim, the subject "responds" to indicate his ability to hear, and in the other he "repeats the signal". Both claims call for the same thing, except that claim 2 is broad enough to include other means of responding than by the repetition of the signal. Clearly this should not be regarded as such a broadening limitation as to make the claim non-allowable.

We do not think that allowed claim 1 affords adequate protection to appellant's invention, because his invention is broader than is defined in that claim. One practicing the art could avoid infringement by omitting to have the patient repeat each signal, although the patient might, by some other *response,* impart the same information.

It seems to us that the board erroneously interpreted the appealed claim. We think it distinguishes in a patentable sense over the Wengel patent, and it seems clear to us that it defines an improvement, new and useful, which is entitled to patent protection.

The decision of the board is reversed.

Reversed.