38 C.C.P.A.(Patents)
### Application of RICHARDS.
#### Patent Appeals No. 5726.

United States Court of Customs
and Patent Appeals.
February 27, 1951.

Charles R. Fay, Worcester, Mass. (Munson H. Lane, Washington, D. C., of counsel), for appellant.

Kenneth D. Richards, pro se.

E. L. Reynolds, Washington, D. C., for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

One claim of appellant's application for a patent for a compensating pattern control device for a shotgun was allowed by the Primary Examiner, but four were rejected as unpatentable over the prior art, the Board of Appeals affirming the rejection. The appellant filed a Petition for Reconsideration which was denied by the board, and from these decisions appellant has appealed to this court. R.S. 4911, 35 U.S.C.A. § 59a.

The invention resides in what appellant alleges is the first combination of a *continuously variable* shotgun pattern control device with a compensator or recoil reducing device. As described in the specification, the combination comprises a tubular member having a main body, which is adapted to be attached by any desired means to the muzzle of a shotgun barrel, and having a forward or outer end. The main body forms the recoil reducing portion and comprises a chamber enlarged in diameter in respect to the gun barrel, having slots in i so as to vent the chamber, and containing ɩ, spiral baffle, which is not included in the claims before us. The forward or outer end of the tubular body forms the continuously variable shot pattern control device

(continuously variable choke), and is provided with longitudinal slots dividing the same into finger-like segments which may be compressed by a ferrule in screw threaded engagement with the forward or outer end of the tubular member. This rotatable ferrule compresses the segments through a cam-like engagement therewith, and thus as it is rotated continuously varies the diameter of the opening in the forward or outer end of the tubular body to form a continuously variable choke. The interior of the rear end of the choke portion is formed with a constriction.

The theory of operation of the device is that, when a shell is discharged, the gases will be expelled from the muzzle of the barrel, will expand in the enlarged chamber, and will in part pass through the vent slots. This is intended to reduce the recoil. After the shot column has traversed the enlarged chamber it enters the constricted portion at the rear end of the choke, and is compressed by the forward portion of the choke according to the degree to which the choke segments are constricted by the ferrule. Depending on the adjustment of the ferrule the shot may be discharged with no choke or with full choke, or with any degree of choke intermediate these two extremes.

■ All of the appealed claims are of substantially the same scope, and since appellant makes no attempt to distinguish between them they may be considered as a unit, with claim 11 taken as typical. Claim 11 reads: "11. The combination with a shot gun barrel of means for effecting both an adequate recoil reduction and a full range of shot pattern control, said means comprising in combination a continuously variable shot pattern control device and a recoil reducing device comprising an enlarged vented chamber and a constriction which are traversed by the shot column."

The appealed claims, 11 to 14 inclusive, were rejected in the Patent Office as being unpatentable over the following references in combination: Cutts, 1,773,260, Aug. 19, 1930; White, 2,335,138, Nov. 23, 1943.

The Cutts patent discloses a combination choke and compensator, wherein the compensator consists of an enlarged tubular chamber containing venting slots, and the choke comprises a constriction containing tube screw threadedly attached to the forward end of the compensator. The choke is "variable" by reason of the provision of various size choke tubes to be interchangeably attached to the compensator.

The patent to White is directed to a continuously variable choke comprising a shell, slotted to form segments, and having a screw threaded ferrule rotatable thereon to control the expansion or compression of the spring fingers to vary the amount of choke in the same manner as disclosed in the present application.

Claim 11, taken as representative, recites two elements:

"1. A continuously variable shot pattern control device, and

"2. A recoil reducing device comprising an enlarged vented chamber and a constriction which are traversed by the shot column."

The examiner pointed out and the board agreed that, as shown by Cutts, the combination of a variable shot pattern control device and a compensator was old, and that it would not require invention to substitute White's *continuously* variable shot pattern control device for Cutts' shot pattern control device which is variable *in steps*. Such a change, said the board, would be a mere substitution of one choke for another choke and would produce no new, unobvious or unexpected result. Appellant, admitting that both the continuously variable choke and the compensator releasing gases in a sidewise direction are old, maintains that, nevertheless, he was the first to successfully combine the two. It is appellant's contention that by substituting the choke of White for the choke of Cutts, "* * * it is impossible to get the results of the applicant, or any satisfactory results * * * [and] * * * a plurality of important unobvious results obtained by the combination of the present invention, cannot be obtained by any device in which the Cutts compensator is present."

The affidavit of a purported ballistics expert was introduced showing the superior performance of appellant's device compared

to that of Cutts or White. The solicitor for the Patent Office takes the position that the affidavit has no material bearing on the patentability of the appealed claims because it makes no comparison between appellant's device and the proposed combination of Cutts and White, and furthermore, the appealed claims are not specific enough to obviate the objectionable features which applicant contends would attend the proposed combination.

Appellant does not attack the combination of the Cutts and White devices as being beyond the ken of one skilled in the art, nor does he point out how the claims distinguish over such combination. It is instead appellant's contention that such combination would not produce the new and unobvious results obtained by him, or any useful results. We agree with the board that the combination of Cutts and White clearly would not require invention. We then come to a consideration of appellant's alleged new and unobvious results. The affidavit submitted by appellant does indeed show that the device tested possesses several advantages over *either* the Cutts *or* the White device. For two reasons, however, we do not reach the question of whether or not these results are unexpected or unobvious. The first of these is that the affidavit did not compare the appellant's device with the proposed combination but with each element thereof, and consequently it is impossible to tell whether or not the most simple or crude combination of the two prior art devices would produce the same advantageous results. Secondly, it clearly appears that the claims in issue are broad enough to be fully readable upon the most simple combination of the Cutts and White devices, and consequently any inferiorities imputed to such combination also inhere in the claimed device. For the same reason any advantages of the claimed device would clearly be found in the proposed combination. While it may well be that appellant's specific device would be superior to the proposed combination, this would not justify the allowance of claims such as those before us, which do not distinguish in any way from that combination.

The right of an applicant to a patent is dependent not only upon the new and unobvious results his device will produce, but also upon whether or not the claims recite structure which would bring about those results. This court has held that the right of an applicant to a patent depends, not only on what his device will do but what he claims for it. In re Molyneaux, 35 F.2d 68, 17 C.C.P.A., Patents 573. The court has also held that the particular feature or fact upon which an applicant predicates patentability must not only be disclosed in the specification but also brought out in the claims. In re Henschell, 90 F.2d 357, 24 C.C.P.A., Patents, 1287; In re Lane, 168 F.2d 551, 35 C.C.P.A., Patents, 1217.

For the reasons hereinbefore set out, the decision of the board is affirmed.

Affirmed.