39 C.C.P.A.(Patents)

**Application of BISLEY.**
**Patent Appeal No. 5876.**

United States Court of Customs and Patent Appeals.

May 28, 1952.

Albert H. Kirchner, Washington, D. C., for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office rejecting as unpatentable over the prior art claims 4, 14, 19, 20, 23, 25, 35, 36 and 39 of appellant's application for a patent on improvements in a "Household Food Mixer." Seventeen claims (claims 5, 10, 11, 21, 24, 26 through 34, 37, 38 and 40) have been allowed.

The appealed claims relate to various features of an electric food mixer of the generally familiar type commonly used in household kitchens and sold in most electrical appliance stores. The mixer has a base which supports a bowl, or, alternatively, either one of a pair of bowls of different size. Rising from the base at one end thereof is a pedestal or standard on which there is pivoted a supporting member which in turn serves to mount a horizontally extending electric motor power unit and beater drive assembly. A pair of agitators or beaters projects vertically downward from one end of the motor unit into the bowl for mixing the contents thereof, such as a cake batter or the like.

The claims on appeal are directed to four different and distinct features of such a mixer. For convenience, appealed claims relating to a particular feature will be grouped together as Groups I, II, III and IV, and each group will be discussed separately below. The claims of each respective group differ in scope from each other but, insofar as disposition of this case is concerned, have no relationship to any of the claims of any other group.

The references relied on by the Patent Office are: Young 377,003 Jan. 24, 1888; McDonald 920,374 May 4, 1909; Knapp 2,048,455 July 21, 1936; Goldblatt et al. 2,113,916 April 12, 1938; Kochner et al. 2,131,290 Sept. 27, 1938; Bean 2,192,843 Mar. 5, 1940.

## Group I

Group I consists of appealed claims 20, 25, and 39. As in most conventional mixers of this type, the supporting member of the power unit is hinged or privotally mounted on the pedestal, which rises from the base, so that the beaters can be swung into and out of the mixing bowl when necessary. The claims of this group are directed to an allegedly novel and inventive hinge connection which includes a pivot pin between said support member and pedestal arranged at an angle to both vertical and horizontal planes, considering the base of the mixer as establishing a horizontal datum plane. This angle of the pin is such that the motor unit is "swung up" out of the plan projection of the bowl to provide access to it by a sort of roll-over movement which has a considerable lateral component of motion sideways. Thus, the over-all height of the mixer is not appreciably increased when the motor unit is moved and the mixer may be more conveniently used on a work area below a low overhanging shelf or cupboard. The angle of the pivot pin is also such that the lower ends of the beaters remain within the projection of the bowl when the motor unit is "swung up" so that drippings from the beaters will be caught by the bowl. Just below this pivot pin there is a second vertical pivot connection between the support member and the pedestal, about which the motor unit and its support member may be swung bodily sideways in order that the beaters may be moved from the center to the side of the bowl if desired.

Claim 20, which appears to be representative of the claims of this group, reads as follows:

"20. In a household food mixer the combination of a power unit driving an agitator comprising a pair of inter-digitating beaters revolving about horizontally spaced vertical axes in their working position defining a vertical plan, a large and small mixing bowl, means for supporting the bowls interchangeably for rotation about a predetermined axis, means providing relative shifting between the agitator and said supporting means for locating the agitator in close proximity to one side of either bowl, and means for tilting the power unit to raise the agitator from its working position including a pivot pin located at a point on a line perpendicular to said plane between said axes and whose axis passes closest to the agitator at a point spaced from the pin and outside said one side of the bowl said pin axis intersecting at an acute angle the vertical plane defined by said predetermined bowl axis and the pin itself and the agitator transcribing an arc having a horizontal component of movement away from said side of bowl which is proximate thereto while the power unit is moved laterally from directly over the bowl."

Claims 20, 25 and 39 were rejected as unpatentable over Kochner et al. That reference discloses a mixer having an arrangement of base, pedestal, motor unit, and support member which is broadly similar to appellant's. However, in the reference the support member is hinged to the pedestal in conventional fashion by means of a pivot pin having a horizontal axis so that when the motor unit is swung back to lift the beaters from the bowl it moves in a vertical plane, thereby increasing considerably the over-all height of the mixer.

The board was of the opinion that the limitations of these claims when reduced to fundamentals mean only that the pivot pin is disposed at any angle, no matter how slight, to the vertical plane which passes through the center of the bowl and the center of the pedestal. The board held that this would be satisfied by only a slight angular deviation of the horizontal pin of Kochner et al. and that such a change was not, in its opinion, inventive.

The examiner allowed thirteen claims of varying scope directed to appellant's allegedly novel pivot mounting feature, which is the subject of claims 20, 25 and 39. Two of these claims specifically define in degrees the limits of angularity at which the axis of the pivot pin may be set with respect to horizontal and vertical datum planes. Eleven claims define the angle of the pivot pin axis in essentially geometrical terms by which the angle of

that axis is established with respect to such things as the beater axes, the center of the bowl support, the side of the bowl, the power unit axis, and the like. Allowability of an appealed claim is not controlled by the fact that similar claims have been allowed in the Patent Office, since an appealed claim must be patentable in its own right in the opinion of this court. However, similar claims allowed by the Patent Office tribunals furnish evidence of what features those tribunals regarded as patentable, and we think it proper, and sometimes necessary, to consider allowed claims in order to fully determine the views of the board and the examiner. See In re Strommen, 149 F.2d 156, 32 C.C.P.A., Patents, 1007, and In re Barnes, 140 F.2d 1006, 31 C.C.P.A., Patents, 912.

■ Since the examiner allowed thirteen claims directed to this feature, it appears that he was of the opinion that appellant's physical embodiment of this feature involved an inventive concept over the art of record. Although the change, when viewed after the event, seems simple, we think it an unobvious one and concur with this opinion of the examiner. See In re Osplack, 195 F.2d 921, 39 C.C.P.A., Patents, ——, and cases cited therein. The right of an applicant to patent claims, however, depends not only on what new and unobvious results his disclosed device will produce but also on whether the claims adequately recite the feature which produces these results and upon which applicant predicates patentability. In re Richards, 187 F.2d 643, 38 C.C.P.A., Patents, 900, and cases cited therein. If the claims fail to adequately define such feature by proper limitations, they are not allowable even though the device as disclosed would support patentable claims. In re Pinkerton, 115 F.2d 823, 28 C.C.P.A., Patents, 803. Thus, the essential issue as to the claims of Group I is whether they adequately define over the prior art the patentable subject matter of appellant's physical embodiment.

■ It appears to us that, as pointed out by counsel for appellant, the precise degree of angularity of the pivot pin may vary depending on relative size and position of various elements of the mixer as, for example, position of the beater axes, motor unit, pivot pin, and axis of the bowl support, and size and position of the bowl. In view of this, we think that in this particular case appellant may properly recite this feature in geometrical language, and such claims may be allowable if they adequately define over the prior art in accordance with the above-discussed rules. We note that the examiner was of like opinion since he allowed eleven claims defining this feature in this manner.

■■ We are unable to agree with the board's holding as to claims 20 and 39. It appears to us that these claims define the angle of the pivot pin wtih respect to component elements of the mixer, albeit by geometrical language, in such a manner that the pin is structurally located, by the terms of these claims, at a substantial angle with respect to identified horizontal and vertical datum planes and within that range of angularity which will achieve appellant's desired novel result. Definite limitations in a claim should not be ignored or construed out of the claim. See In re Samiran, 86 F.2d 756, 24 C.C.P.A., Patents, 775. Therefore, we think that claims 20 and 39 patentably define over Kochner et al. and that the board erred in rejecting these claims on that reference.

■ Turning to claim 25, we agree with the board that the terms of this claim read on Kochner et al. but for the slightest angular variation of the horizontal pivot pin of that reference. No new or unexpected result could be achieved by such a change, and we concur with the board's opinion that such a change is not inventive. Since we are of the opinion that what claim 25 calls for that is not shown in the reference is not inventive, recitation of this matter does not make the claim patentable over the disclosure of the prior art. See In re Oakes, 140 F.2d 669, 31 C.C.P.A., Patents, 833; also In re Richards, supra. Accordingly, we hold that the board did not err in rejecting this claim.

Group II

■ Group II consists of claims 4, 35 and 36. These claims are directed to a

mechanism for quick and easy removal of the beaters or agitators. When in use, the beater shafts are mounted by means of a resilient key arrangement within driven sleeves journalled in the motor housing. In the familiar handle on the power unit, appellant has mounted a pivoted trigger type lever. This lever, when actuated, acts through appropriate intermediate means on a pin-like thrust member to push it down through the upper open end of the said sleeves, causing it to bear on the upper end of the beater shafts mounted therein. This dislodges the beater shafts axially, thus breaking driving connection with the motor shaft. Thus, when desired, and particularly in any emergency, the beater drive connection may be easily and quickly broken by a flick of the operator's finger and without removal of the hand from the mixer handle.

Claim 4, which appears to be representative of the claims in this group, reads as follows:

"4. In a food mixer of the class described the combination of a housing, a driven shaft journalled in the housing and comprising a sleeve, said sleeve having an opening at one end to receive a beater shaft in driven relationship, and an opening at the other end exposing the upper end of a beater shaft received in said sleeve, a lever, and thrust means driven by said lever for engaging said exposed end of the beater shaft and movable by the lever in a direction generally axially of the sleeve to dislodge the shaft."

Appealed claims 4, 35 and 36, and allowed claim 5, were rejected by the examiner as unpatentable over Knapp in view of Young.

Knapp shows a food mixer having a pair of power driven sleeves journalled in the mixer head with the means for breaking driving connection between the sleeves and beater shafts mounted therein for removal of the beaters. That means comprises a plate mounted on the bottom of the mixer head and spring-biased against said head, the plate having portions which bear against enlarged collars on each beater shaft. There is a handle extending from the plate, and when this is pushed downward the plate bears against the collars on the beater shafts, thereby displacing them longitudinally out of driving engagement with the sleeve. There is an opening in the mixer head at the upper end of one of the sleeves, the opening apparently being provided for driving of a juicer attachment.

Young discloses a sleeve-like tool handle for holding various types of tool bits in a tool shank socket at one end of the handle. The handle has a built-in cylindrical ejector pin, one end of which contacts one end of the tool shaft, and the pin may be longitudinally displaced by pressure against its other end, thereby ejecting the tool bit from the handle.

The examiner rejected claims 4, 5, 35 and 36 on the ground that it would not be inventive to substitute for the beater ejector system of Knapp a pin ejector means such as shown in Young with the ejector pins mounted so as to enter the top end of the driven sleeves and act on the top of the beater shafts; and, further, that it would not be inventive to use a lever to actuate the ejector pins against the beater shaft ends.

Claim 5 calls for a pair of beaters, sleeves and thrust elements for simultaneously ejecting a pair of beater elements by operation of the lever. As to claim 5, the board was of the opinion that the references would not suggest to one skilled in the art a modification of the Knapp device such as proposed by the examiner, particularly in view of the fact that Knapp shows but a single opening providing access to the top of only one beater shaft. It therefore held claim 5 not anticipated by the prior art and reversed the examiner. The board then pointed out that claims 4 and 36 call for only one sleeve, beater shaft, and ejector means, and that Knapp does disclose a hole furnishing access to the top of one beater shaft although provided for a different purpose from that involved here. It therefore held claims 4 and 36 unpatentable over Knapp in view of Young proposing substantially the same modifications, discussed above, which the examiner suggested in support of his rejection of claims 4, 5, 35 and 36.

After careful examination and comparison of claims 4, 5 and 36 we are of the

opinion that claims 4 and 36 are substantially the same as claim 5, excepting that the latter calls for a pair of beaters, etc., whereas the former call only for a single beater, etc. We have discussed above the significance of comparing appealed claims with similar allowed claims. In re Strommen and In re Barnes, supra. Although claims 4 and 36 recite but a single beater, we think the rejection of these claims on Knapp in view of Young is subject to the same criticisms which the board advanced in overruling the rejection of claim 5. We fail to see how the references would suggest to one skilled in the art the examiner's and the board's proposed modifications of Knapp to meet the structure recited in claims 4 and 36. We think that this can be done only by an unfair reconstruction of the references in the light of appellant's disclosure. Accordingly, it is our opinion that claims 4 and 36 patentably define an invention not disclosed by the prior art of record, and that the board erred in sustaining the examiner's rejection of these claims.

 The rejection of claim 35 was sustained by the board on different grounds. The board was of the opinion that this claim was unpatentable over Knapp alone because it was readable on that reference in terms. Where the issue is patentability over prior art, claims of a pending application are to be given the boardest interpretation which they will *reasonably* support. In re Erickson, 171 F.2d 307, 36 C.C.P.A., Patents, 734; In re Kendall, 173 F.2d 359, 36 C.C.P.A., Patents, 975. In its opinion, the board set out in detail the manner in which the claim was readable on the Knapp reference. We think that the board's interpretation of the terms of the claim is a reasonable one, and we are of the opinion that this rejection of claim 35 is correct. It appears to us that appellant's main contention concerning the board's rejection of this claim is that the plate and handle member disclosed by Knapp is not a "lever" as recited in the claim. We think that member of the reference is in fact a "lever" within the ordinary meaning of the term. Assuming, *arguendo,* however, that it is not, it is so like a lever in form and mode of operation

that we think this contention is without merit.

## Group III

 Claim 14 is the sole claim in this group. That claim reads as follows:

"14. A base for a household food mixer comprising a centrally recessed upper portion having a threaded boss upon the bottom side, reinforcing ribs radiating from the boss to downwardly flanged edges of the base, one of said ribs having a recess receiving one end of a looped spring with the loop thereof concentric with the boss, means upon the base for supporting the other end of the spring under tension to tighten the loop, the outer ends of the ribs being enlarged internally, an elongated resilient element resting against the inface of the edges and extending from one rib to another and extending downwardly to space the boss and spring above a table top, a curved element pressing the resilient element against the edges, and means received in said enlarged portion of the ribs for holding said curved element in place."

As is apparent from the claim, it is directed to structural details of the mixer base. These include reinforcing ribs radiating from the boss that supports the bowl-supporting turntable generally found on such mixers, a resilient type of footing element for the base, and a looped spring member which acts as a locknut for holding at any adjusted height a sleeve threaded into said boss, in which sleeve the turntable is rotatably mounted.

Claim 14 was rejected as unpatentable over Bean in view of McDonald and Goldblatt et al. Bean shows a mixer having a bowl-supporting turntable similarly mounted in a boss in the base of the mixer by means of a sleeve threaded into said boss. The sleeve may be rotated to adjust the height of the turntable in the same manner as in appellant's mixer and is held in a given position by means of a locknut. McDonald shows a similar looped spring which is used as a nut lock. Goldblatt et al. discloses a similar mixer which has a plurality

of resilient cup-type footing members attached to the bottom of the base.

The examiner and the board considered the footing structure claimed to be an uninventive mechanical equivalent of that shown by Goldblatt and the nut-locking looped spring member to be the mechanical equivalent of the locknut shown in Bean. It was their opinion that it would not be inventive to modify the Bean device using these features shown in the other references in the manner recited in this claim. The board also pointed out that strengthening ribs were a notoriously old expedient and that it regarded provision of the same to be a matter of mechanical skill. Both tribunals further pointed out—we think correctly—that there was really no patentable coaction between the various detailed components of the claim, as, for example, the resilient footing and the looped spring lock means. However, the claim was not directly rejected by either tribunal as being aggregative.

It is well settled that claims may be properly rejected on a combination of several patents taking specific features from each. It is not necessary that a complete disclosure be contained in a single reference. In re Lindberg, 194 F.2d 732, 39 C.C.P.A., Patents, ——, and cases cited therein. Moreover, a claim may sometimes be properly rejected on a combination of references even though that combination does not show all limitations in the claim, *providing* such limitations as are not shown are not inventive and patentable over the disclosures of the prior art. In re Oakes, supra. We think these rules are particularly applicable where, as here, a claim recites in detail a plurality of distinct components between which there is no coaction so that the details of any one of these respective components are a matter of indifference to the nature and operation of the other components. We concur with the board's opinion that claim 14 does not involve invention over the prior art but rather involves only the exercise of mechanical or designing skill which has not produced any unobvious or unexpected results. To be patentable a claim must be directed to inventive subject matter, as novelty and utility alone are insufficient to support allowance of patent claims. In re Lindberg, supra, and cases cited therein. Therefore, applying the above rules, we think that under the facts of this case the decision of the board refusing claim 14 was correct notwithstanding that it combined references and resorted to arguments of equivalency and obviousness as well.

### Group IV

Group IV consists of appealed claims 19 and 23. Claim 19, which is the more specific of these two claims, reads as follows:

"19. A household food mixer having a rotary agitator and a base having a recess in its upper face below said agitator, a turntable rotatably mounted in said recess and having a single annular seat thereon to receive bowls of different sizes having annular rings, which rings have an identical dimension on their bases to mate with said seat, the larger of said bowl being rounded outwardly and upwardly from said ring, said bowls being rotated by the action of the agitator on the contents of the bowl when the agitator and bowl are disposed in predetermined relationship and said recess closely following the contour of said turntable and said rounded portion of the bowl adjacent said ring, whereby said turntable may be removed and the ring received in said recess to center the bowl, and said rounded contour supports the bowl for free rotation by hand."

As is apparent from claim 19, these claims are directed to details of the bowl-supporting means in the mixer base. It is conventional for the bowl to be mounted on a turntable which will rotate due to reaction between the revolving beaters and the bowl contents. According to appellant, the bowl will sometimes rotate at objectionably high speed with contents of certain kinds, and appellant has modified the base of the mixer to provide a means for overcoming the problem. Appellant has provided a recess in the mixer base to accommodate a removable turntable which operates in conventional fashion. The turntable has a single annular seat which is so shaped that it will receive either of a pair of mixer bowls of different sizes having appropriately designed rings at the bottom of the bowls.

The annular recess in the base closely follows the contour of the turntable and also follows the contour of the rounded bottom portion of the bowl adjacent said rings. The design and shape of turntable, bowl, and base recess is such that when the turntable is removed the bowl may be firmly seated in the recess at just a slightly lower level than when on the turntable, and be properly centered with respect to the beaters. The bowl is then at such height that efficiency of the beaters is substantially the same, and the bowl will not rotate or, if it does, will do so at a greatly retarded speed.

Claims 19 and 23 were rejected by the Patent Office tribunals as unpatentable over Bean. Insofar as that reference is pertinent to a discussion of these claims, it discloses a generally similar mixer having a base on which a turntable is mounted in suitable fashion. The turntable surface is so designed that it will receive either of two bowls of different sizes, the bowl bottoms being designed of appropriate shape so that they may be alternatively mounted on the turntable. The top surface of the mixer base of Bean is flat except, of course, for the small hole in which the center of the turntable is mounted. Although the turntable is, by virtue of its construction, removable, the Bean disclosure does not indicate that it was intended to be removed for any particular purpose.

The board, in affirming the rejection of claim 19, was of the opinion that to remove the turntable of Bean and place the bowl directly on the mixer base, if desired, is an obvious expedient. It held also that to provide a recess in the base to better position the bowl when so disposed would not involve invention; and, further, that to make the recess of any specific contour such as to match that of the bowl would not involve invention. The board applied the same reasons against claim 23, in affirming the rejection of that claim, but pointed out also that this claim did not recite any specific contour of the recess as does claim 19.

Counsel for appellant in his brief contends that in a case like this invention is to be gauged not alone by the extent or simplicity of the physical changes made, but also by the perception of the necessity or desirability of making such changes to produce a new result. We think that this contention has merit. When viewed after disclosure by appellant these changes seem simple and such as should have been obvious to those in the field. However, this does not necessarily negative invention or patentability. Goodyear Tire & Rubber Co., Inc., v. Ray-O-Vac Company, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; In re DeLancey, 159 F.2d 737, 34 C.C. P.A., Patents, 849. Moreover, the conception of a new and useful improvement must be considered along with the actual means of achieving it in determining the presence or absence of invention. In re DeLancey, supra. The discovery of a problem calling for an improvement is often a very essential element in an invention correcting such a problem; and though the problem, once realized, may be solved by use of old and known elements, this does not necessarily negative invention. In re Hamilton, 64 F.2d 141, 20 C.C.P.A., Patents, 987. We think appellant's physical embodiment of this feature has desirable advantages, and it appears to us there will be little increase in cost of production to achieve them by use of his relatively simple modification of the prior art devises. We fail to see in the Bean patent any suggestion of the improvement represented by appellant's physical embodiment. Moreover, although the physical means of accomplishing appellant's improvement, and its new and useful results, is simple, we are not convinced that the conception of so improving on the prior art devices would be obvious to those skilled in the art. Accordingly, we are of the opinion that appellant's disclosed physical embodiment represents an inventive advance over the art of record.

Having reached this conclusion, disposition of these claims depends on whether they patentably define an invention in view of the prior art. In re Richards, In re Pinkerton, and In re Oakes, supra. We are of the opinion that claim 19 does patentably define over the prior art. That claim adequately recites the structural details of the base recess, turntable, and bowl, and the respective positions and shapes of these elements, so as to sufficiently describe by terms of the claim a device which represents appellant's physical embodiment and

will accomplish the new and useful results achieved by such embodiment. As pointed out by the board, however, and noted above, claim 23 omits certain material limitations recited in claim 19. As we read claim 23, the only substantial difference from the Bean device recited therein, other than use limitations, is that the turntable is in a recess in the base. A limitation reciting only manner of operation or use will not sustain patentability of a claim. In re Storsand, 159 F.2d 446, 34 C.C.P.A., Patents, 835, and cases cited therein. We do not think mere provision of a recess for the turntable involves an invention, and we are therefore of the opinion that this claim fails to patentably define over the prior art. See In re Oakes, supra. Consequently, we hold that the board erred in affirming the rejection of claim 19, but was correct in holding claim 23 unpatentable over the prior art.

In view of the foregoing, the decision of the Board of Appeals is *modified*. The rejection of claims 14, 23, 25 and 35 is *affirmed*, and the rejection of claims 4, 19, 20, 36 and 39 is reversed.

Modified.

JACKSON, J., sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with Section 294(c) (d), Title 28 U.S.C. to participate in the decision and did so.