56 CCPA

**Application of Paul C. DETERS.**

**Patent Appeal No. 8148.**

United States Court of Customs and Patent Appeals.

May 15, 1969.

Bosworth, Sessions, Herrstrom & Knowles, Cleveland, Ohio, attorneys of record, for appellant. Arthur L. Cain, Cleveland, Ohio, of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge and CLARK, Justice (Ret.) and NEESE, Judge, sitting by designation, ALMOND and BALDWIN, Judges.

BALDWIN, Judge.

This appeal is from the Patent Office Board of Appeals decision affirming the examiner's rejection of claim 16 of appellant's application [1] under 35 U.S.C. § 102 as fully met by a Swiss patent.[2] Claims 10, 21 and 22 have been allowed.

## THE INVENTION

The invention resides in an improvement to conventional tile cutting apparatus to produce right cylindrical tiles having particular undulated end faces. Such tiles, when laid end to end forming a drainage line, have suitable openings between the contacting portions of the end faces to only permit soil water to flow into the drainage line. This obviates the need for careful hand spacing of the tiles during laying. Figure 3 of the application is reproduced as follows:

Fig. 3.

Cradles 26 on an endless conveyor 18 support a length of tile (not shown) which is issued from an extruder (also not shown) and is carried continuously

1. Serial No. 276,395, filed April 29, 1963, for "Drainage Tile and Apparatus for Making the Same."

2. Swiss Patent 110,241, Sept. 3, 1924.

to the left. The conveyor also supports spaced standards 27 whose front faces 51 intermittently engage arms 39 on a circular drum. The ends of the arms 39 are bifurcated to support transversely extending cutting wires (not shown) which are moved downwardly through the tile upon continued leftward motion of standards 27, to sever the tile into lengths. This much is acknowledged to be conventional. Appellant has, however, provided vertically spaced lugs 50 on the advance face 51 of each standard 27 to cause the cutting wire to undergo small longitudinal reciprocations as it cuts downwardly through the tile, producing an undulated end surface on each tile.

Claim 16 reads:

16. In apparatus for cutting clay tile from a blank comprising means for conveying the tile and tile blank through the apparatus, means for cutting the tile from the blank, means for passing the cutting means through the blank to sever the tile and to maintain the path thereof perpendicular to the axis of the tile and blank as it passes therethrough, the improvement of *means for reciprocating said cutting means longitudinally relative to the direction of travel of said tile and blank as said cutting means passes perpendicularly through said tile and blank.* [Emphasis added.]

## THE REFERENCE

The Swiss patent discloses an apparatus for cutting lengths of building block from extruded material and is illustrated in Figures 1 and 2 which follow:

A length A of Z-section building material issuing from an extruder 15 moves to the right along supporting rolls 16 and 17 until it contacts a stop (not shown). The handle 8 is then manually rotated and acts through various mechanical linkages to move a bracket 10 downwardly. The bracket 10, which supports two transverse cutting wires 12 and 13, is connected to pins 11 slidably received in guide grooves 3'. The motion of the bracket during an operation is described in an English translation of the Swiss specification, as follows:

The motion of bracket 10 corresponds to the course of the guide grooves 3' by which, through parts 11 and 9, the motion of this bracket is controlled. The guide grooves 3' are shaped in such a way that, after a certain rectilineal downward travel, bracket 10 is obliquely moved aside.

After execution of this move, the bracket continues to descend rectilineally. * * * After completed execution of the separating cut, bracket 10 is returned to its raised position.

## THE REJECTION

The examiner rejected claim 16 as fully met by the Swiss patent under 35 U.S.C. § 102. Answering arguments by appellant that the Swiss patent failed to disclose the reciprocating movement of the claim, the examiner's Answer stated:

[I]t is clear the cutting wires 12, 13 of the Swiss patent pass perpendicularly through block C in both a downward and an upward movement, and that slot means 3′ facilitates a reciprocating motion (i. e., "forward and backward alternately"—Webster's Seventh New Collegiate Dictionary) as the cutting means 12, 13 pass perpendicularly down and up through block C.

In conclusion, the examiner urged "that Applicant has received claim coverage commensurate with the scope of his contribution to the art * * * and that the rejected claim * * * is not properly includable within this scope."

The Board of Appeals, in affirming, opined that:

* * * the claim does not require the tile to be moving at the time it is cut. As drawn, the claim is readable directly on the Swiss patent. The limitations for distinguishing over the prior art must be found in the claim, rather than in the disclosure.

Thus, as stated by appellant, "the only issue on appeal is whether or not the Swiss patent (No. 110,241) discloses every element of claim 16 on appeal so as to be an anticipation thereof" under 35 U.S.C. § 102.

## OPINION

That appellant's application discloses a patentable invention is recognized by allowed claims 10, 21 and 22. The sole problem here is whether the invention *defined by claim 16* distinguishes over the prior art.

Thus, this court's inquiry is to see whether the language of claim 16, given its broadest reasonable interpretation.[3] can be read upon the structure disclosed in the Swiss patent. Appellant says not, arguing that:

* * * the plain language of claim 16, both alone and when read in view of the specification, is that (a) the apparatus is for cutting a moving, passing, blank, (b) the means must reciprocate longitudinally as it passes (moves) through the blank and tile to *sever* the tile, and (c) the cutting means must travel in an essentially perpendicular path as it severs the tile. [Emphasis added.]

None of these claimed limitations is shown nor suggested in the Swiss patent.

Appellant argues that the first allegedly distinguishing limitation (a), supra, follows from the use of the word "passes" in the portion of the claim which reads "means for passing the cutting means through the blank to sever the tile and to maintain the path thereof perpendicular to the axis of the tile and blank as it *passes* therethrough." [Emphasis added.] Appellant contends that the word "passes" does not embrace the intermittent motion of the extruded blank of the Swiss patent. However, we agree with the solicitor's position that the word "passes," given its broadest reasonable interpretation, encompasses both continuous and interrupted motion. We do not therefore think that use of the word "passes" in the claim, in connection with the motion of the blank, prevents the claim from being read upon the apparatus for severing an intermittently moved blank disclosed in the Swiss patent.

The second allegedly distinguishing limitation (b), supra, is based upon

---

3. See In re Bisley, 197 F.2d 355, 361, 39 CCPA 982, 990 (1952) and cases cited therein.

the claim limitation of "means for reciprocating said cutting means longitudinally relative to the direction of travel of said tile and blank as said cutting means passes perpendicularly through said tile and blank." This recitation, appellant argues, requires that at least one complete reciprocation of the cutting wire must occur during the single downward stroke required to sever the tile; and, says appellant, it is not met by the Swiss structure wherein a complete reciprocation is not achieved until *both* the downward cutting stroke and the upward return stroke have been performed. *Our problem with this argument is to discern where, in the phrase,* "as said cutting means passes perpendicularly through said tile and blank," there is expressed idea that the passing of the cutting means is restricted to the downward stroke alone. Indeed, to the contrary, appellant's specification implies that reciprocating motion may be achieved *during a cycle containing both up* and *down motion, stating*:

> In order to accomplish the objects of this invention the apparatus 2 is provided with means whereby the cutting wires 43 are caused to reciprocally travel in a longitudinal direction, relative to the direction of movement of the blank and newly cut tiled through the apparatus, as they also move up *and* down vertically, relative to the same direction of travel, in order to sever the tile. [Emphasis added.]

We are not therefore persuaded that that the limitation as to reciprocation of the cutting means during perpendicular passage through the blank, when given its broadest reasonable construction, may not be read upon the Swiss structure.

Appellant's final argument that the Swiss structure does not meet the claim because the motion of the cutting wires is not perpendicular to the blank, is unconvincing to us as it seems that any interpretation of the perpendicular motion limitations of the claim, broad enough to comprehend the deviation from perpendicular motion of appellant's cutting wires, must necessarily be broad enough to comprehend the deviation of the cutting wires of the Swiss device.

 In summary, we feel that the language of rejected claim 16, given its broadest reasonable interpretation, is fully met by the structure disclosed in the Swiss patent. The rejection is therefore affirmed.

Affirmed.

NEESE, J., concurs in the result.